21 F.3d 1462
 Edward SLOMAN, Plaintiff-Appellee,
v.
Philip TADLOCK; David Allen; Roger Douglas; Pat Sardella,
aka Mr. Whitaker; Matthew Obertone; Neil Rein;
Simi Valley Police Department, Defendants,
and
City of Simi Valley; Herman Hale, Defendants-Appellants.
 Nos. 92-55597, 92-55692 and 92-55851.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 4, 1993.
Decided April 14, 1994.
 
 Edward M. Fox, Esq., Klass, Helman & Ross, Los Angeles, CA, for plaintiff-appellee, and cross appellant.
 Malcolm Tator, Kosmos, Cho & Brown, Ventura CA, foe defendant and cross appellee.
 Bert Deixler, Timothy B. Sottile, McCambridge, Deixler, Marmaro & Goldberg, Los Angeles, CA, for defendants-appellants.
 Appeal from the United States District Court for the Central District of California.
 Before: FLETCHER and D.W. NELSON, Circuit Judges, and HUBERT L. WILL,* Senior District Judge.
 Opinion by Judge FLETCHER.
 OPINION
 FLETCHER, Circuit Judge:
 
 
 1
 The City of Simi Valley and Herman Hale, a Simi Valley Police Officer, appeal a judgment based on jury verdicts denying Hale qualified immunity and imposing liability on both Hale and the City under 42 U.S.C. Sec. 1983 for violating the First Amendment rights of Edward Sloman. Hale and the City challenge the verdicts, the submission of the qualified immunity determination to the jury, and a number of jury instructions and evidentiary rulings. Sloman cross-appeals the amount of the attorneys' fees award, the grant of summary judgment in favor of defendants Phillip Tadlock and David Allen, and the summary judgment finding that the Ventura County District Attorney's office exercised independent judgment in charging Sloman with criminal trespass.
 
 
 2
 We have jurisdiction pursuant to 28 U.S.C. Sec. 1291. We affirm the denial of qualified immunity for Officer Hale, as well as the imposition of Sec. 1983 liability against him, but reverse the imposition of Sec. 1983 liability against the City. We also reverse the grant of summary judgment in favor of Tadlock. We affirm on all other issues presented in the appeal and cross-appeal.
 
 BACKGROUND
 
 3
 Edward Sloman was one of the leaders of Citizens for Managed Growth and Hillside Protection, a group advocating limits to growth in the Simi Valley area. A number of local ballot measures on the November, 1986 election ballot addressed limits to growth, and stirred up strong feelings in Simi Valley. Citizens for Managed Growth and Hillside Protection supported growth-limiting ballot measures "D" and "E," and in October, 1986 Sloman and his group regularly campaigned for these measures by standing on sidewalks during peak traffic hours with hand-held signs.
 
 
 4
 On October 13 and 14, 1986, Sloman was warned by Officers Hale and Neil Rein about alleged interference with traffic. The Officers claimed that Sloman was standing on the median strip and waving his sign in front of oncoming cars, causing them to brake suddenly and dangerously. On October 17, Sloman was given a citation, by Officer Hale, for failing to obey Hale's warnings and continuing to interfere with traffic. On October 30, Officer Hale again warned Sloman about interfering with traffic, this time because Sloman was allegedly pushing a walk button repeatedly, in order to force cars to stop and pay attention to his message.
 
 
 5
 Aside from the incidents involving officers Hale and Rein, a number of other Simi Valley Police Officers talked to or warned Sloman about his method of campaigning. The parties agree that no other members of Sloman's group were warned about their campaigning practices by Hale, Rein, or any other Officers.
 
 
 6
 In addition to the traffic-related incidents, Sloman and Hale had another encounter on October 19 at an indoor "Automotive Trade Fair" sponsored by the Simi Valley Chamber of Commerce. While campaigning at the auto fair, Sloman was involved in a number of altercations about which there is conflicting testimony. Following these disturbances, defendants Tadlock and Allen, who operated booths at the fair, asked Officers Hale and Rein if Sloman could legally be removed from the fair.[1] The Officers informed Tadlock and Allen that police could remove Sloman on the basis of a citizen's complaint. After their request to Sloman to either leave or to put down his campaign sign went unheeded, Tadlock and Allen signed a citizen's complaint form. Officer Diane Sliester then arrested Sloman for a trespass violation and he was taken to jail.[2]
 
 
 7
 Sloman brought suit under 42 U.S.C. Sec. 1983 in federal district court, alleging that Officers Hale and Rein had deprived him of his constitutional rights to free expression and association. He also sued the City, alleging a policy to violate his civil rights and a conspiracy, involving the Police Department as a whole, as well as various private citizens, to prevent him from expressing his political views. Finally, he brought various claims, such as unlawful arrest and malicious prosecution, against Tadlock and Allen.
 
 
 8
 The claims against Tadlock and Allen, and a number of other claims, were dismissed on a summary judgment motion. The only claims to go to the jury were the claims against Hale and Rein, the conspiracy claim against various defendants, and the claim against the City. A defense verdict was returned with respect to Officer Rein and on the conspiracy claim. Sloman prevailed, however, against Officer Hale and the City; the jury found them jointly and severally liable for $35,000 in compensatory damages and awarded $350 in punitive damages against Hale.
 
 DISCUSSION
 I. Qualified Immunity
 
 9
 Because many of the relevant facts were in dispute, the district court submitted the qualified immunity determination to the jury.[3] The jury rejected Hale's claim to qualified immunity. He now contends both that the court, not the jury, should have made the determination, and that he is entitled to qualified immunity on the merits.
 
 
 10
 Government officials such as police officers are not absolutely immune from suit, but rather only "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). The determination of qualified immunity
 
 
 11
 necessitates three inquiries: (1) the identification of the specific right allegedly violated; (2) the determination of whether that right was so "clearly established" as to alert a reasonable officer to its constitutional parameters; and (3) the ultimate determination of whether a reasonable officer could have believed lawful the particular conduct at issue.
 
 
 12
 Romero v. Kitsap County, 931 F.2d 624, 627 (9th Cir.1991) (citations omitted).
 
 
 13
 A line of Ninth Circuit cases holds that the qualified immunity determination should be made by the jury if it is based on facts which are genuinely in dispute. See, e.g., Barlow v. Ground, 943 F.2d 1132, 1139 (9th Cir.) ("[The jury] must decide whether a reasonable official would know that she is violating ... clearly established law.") (internal quotation omitted), cert. denied, --- U.S. ----, 112 S.Ct. 2995, 120 L.Ed.2d 872 (1992). But in Act Up!/Portland v. Bagley, 988 F.2d 868 (9th Cir.1993), we questioned the authority of these cases in light of Hunter v. Bryant, --- U.S. ----, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam).
 
 
 14
 Hunter reversed this court's denial of a grant of summary judgment of qualified immunity to two secret service agents who had arrested a college student, allegedly without probable cause, for threatening then-President Reagan. Bryant v. U.S. Treasury Dept., Secret Service, 903 F.2d 717 (9th Cir.1990). We had said, "[w]hether a reasonable officer could have believed he had probable cause is a question for the trier of fact." Id. at 722. The Supreme Court countered that "[t]his statement of law is wrong," because "it routinely places the question of immunity in the hands of the jury. Immunity ordinarily should be decided by the court long before trial." Hunter, --- U.S. at ----, 112 S.Ct. at 537.
 
 
 15
 In Act Up!, the plaintiffs challenged the constitutionality of a strip search by United States Marshals. The district court denied the defendants' motion for summary judgment on the basis of qualified immunity, holding that the immunity determination must be made by the jury. We reversed, first noting that the facts relevant to the qualified immunity determination were "essentially not in dispute." Id. at 870. Then, relying on Hunter, we held that in such a case the judge must determine, at summary judgment, the "essentially legal question" of whether a reasonable officer would have thought his or her conduct, considering the circumstances, violated the plaintiff's constitutional rights. Id. at 873. We remanded to allow the district court to determine whether defendants were entitled to qualified immunity. Id. at 873-74.
 
 
 16
 Although in Act Up! the facts relevant to immunity were not in dispute, we took the occasion to note the types of disputed facts which might prevent a judicial determination of qualified immunity at the summary judgment stage. Specifically, we stated that the trial judge should not make this determination when there is a genuine dispute as to "the facts and circumstances within an officer's knowledge" or "what the officer and claimant did or failed to do." 988 F.2d at 873. In such cases, the judge must postpone the qualified immunity determination, and "the case must proceed to trial." Id. We did not say how or by whom, during or after trial, the qualified immunity determination should be made, although we did opine that the determination is "ordinarily a question for the court." Id.[4]
 
 
 17
 The Supreme Court, which has developed qualified immunity doctrine in the context of summary judgment cases,[5] has said that immunity "ordinarily should be decided by the court" and should not "routinely" be sent to the jury. Hunter, --- U.S. at ----, 112 S.Ct. at 537. This approach results from the Court's view that qualified immunity is an immunity from suit, not simply a defense. In the "ordinary" or "routine" case, it should be decided at the earliest possible moment to spare the defendant the trauma of trial or its anticipation. The government also is spared the time, expense, and disruption of going to trial to defend against "insubstantial" claims. See Harlow, 457 U.S. at 814, 816-17, 102 S.Ct. at 2736, 2737-38 (describing policies which motivate qualified immunity doctrine). Early decision ordinarily is possible because qualified immunity most often turns on legal determinations, not disputed facts.
 
 
 18
 Where, however, officials are forced to go to trial because their right to immunity turns on the resolution of disputed facts, early determination is not possible. Although some of the reasons for the existence of the immunity doctrine are moot when trial is necessary, other equally important ones remain. First, officials should be shielded from liability for reasonable exercises of judgment in the execution of their duties, even where their conduct is ultimately shown to have been unconstitutional. Id. at 814, 816, 102 S.Ct. at 2736, 2737 (officials should not be inhibited from taking discretionary action). Second, shielding officials from personal liability for reasonable exercises of discretion will help prevent the "deterrence of able people from public service." Id. at 816, 102 S.Ct. at 2737. These reasons do not, however, suggest that a judicial determination at this stage is necessarily better than a jury verdict. The advantage of timing is already lost.[6] In fact, sending the factual issues to the jury but reserving to the judge the ultimate "reasonable officer" determination leads to serious logistical difficulties. Special jury verdicts would unnecessarily complicate easy cases, and might be unworkable in complicated ones. See Act Up!, 988 F.2d at 876-77 (Norris, J., dissenting from failure of court to hear case en banc).
 
 
 19
 On the other hand, there is no reason to think that allowing the jury rather than the judge to determine whether an officer's conduct was reasonable under the circumstances would be inimicable to the policies that animate immunity. On the contrary, evaluating the reasonableness of human conduct is undeniably within the core area of jury competence. Just as the judge can most effectively determine whether a given constitutional right was "clearly established" at a particular point in time, the jury is best suited to determine the reasonableness of an officer's conduct in light of the factual context in which it takes place.
 
 
 20
 The holdings and rationale of Hunter and Act Up!, though helpful, do not decide this case. Nor need we decide here whether judge or jury should be the ultimate decider once disputed foundational facts have been decided by the jury. In this case, the factual findings the jury must have made in imposing liability on Hale would require the district court to deny him qualified immunity in any event. Therefore, even if the court erred in sending the qualified immunity determination to the jury, the error was harmless.
 
 
 21
 Hale's motives for the actions he took were at issue.[7] In imposing liability on Hale, the jury necessarily found that Hale intended to interfere with Sloman's political activity and that it was a substantial or motivating factor in his conduct. See Mendocino Envtl. Ctr. v. Mendocino County, 14 F.3d 457, 463-464 (9th Cir.1994) (applying intent-based, retaliatory discharge framework to similar First Amendment claim). The jury heard testimony that Sloman was not in fact violating any laws when Hale warned and cited him, and that Hale had a strong dislike for Sloman's political beliefs, which he had on a previous occasion allowed to intrude into his police work. See Part II., infra (describing the predicates for the verdict in more detail, and finding them supported by sufficient evidence).[8]
 
 
 22
 In light of the jury's verdict, which must have been grounded in the jury's finding that Hale had warned and cited Sloman not because he was violating any law, but rather because of his political beliefs, the district court could not have done other than to conclude that a reasonable officer in Hale's place would have known his conduct violated Sloman's clearly established constitutional rights. We therefore conclude that allowing the jury to decide the issue either was proper, or at a minimum, was harmless.[9]
 
 II. Defendant Hale's Sec. 1983 Liability
 
 23
 The jury's verdict held Officer Hale liable for violating Sloman's First Amendment rights to free speech and association while acting under color of law. We review the verdict to determine whether it was based on sufficient evidence. Davis v. Mason County, 927 F.2d 1473, 1486-87 (9th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 275, 116 L.Ed.2d 227 (1991). Sufficient evidence is "admissible evidence that reasonable minds might accept as adequate to support a conclusion." Id.
 
 
 24
 Sloman alleges that Officer Hale used his official powers, specifically his power to warn, cite, and arrest, to retaliate against Sloman's exercise of his free speech rights, and to deter Sloman's exercise of those rights in the future. Although officials may constitutionally impose time, place, and manner restrictions on political expression carried out on sidewalks and median strips, they may not "discriminate in the regulation of expression on the basis of the content of that expression." Hudgens v. NLRB, 424 U.S. 507, 520, 96 S.Ct. 1029, 1036, 47 L.Ed.2d 196 (1976). "State action designed to retaliate against and chill political expression strikes at the very heart of the First Amendment." Gibson v. United States, 781 F.2d 1334, 1338 (9th Cir.1986), cert. denied, 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 979 (1987). In this case, Hale violated Sloman's First Amendment rights if by his actions Hale deterred or chilled Sloman's political speech and such deterrence was a substantial or motivating factor in Hale's conduct in issuing citations and warnings to him. Mendocino, 14 F.3d at 464.[10]
 
 
 25
 Cynthia Pandolfi, a member of Sloman's limits-to-growth group, testified at trial that Hale had pulled her over ostensibly for speeding, but instead of giving her a citation had taken the opportunity to criticize her bumper sticker (which indicated support for Ballot Measures D and E). From this the jury could reasonably have inferred that Officer Hale was opposed to Sloman's political beliefs, and that he let such opposition affect his performance of police duties. This witness and others testified that Officer Hale was almost always present when Sloman was picketing for Measures D and E, and that Officer Hale routinely singled Sloman out for warnings and other discussions. Witnesses also testified that Sloman was not waving his sign into oncoming traffic or repeatedly pushing a "walk" button in order to hold up traffic, as Officer Hale claimed. Finally, witnesses testified that Sloman's political activity was clearly inhibited by this pattern of police conduct: he stopped carrying a sign, his overall level of campaigning dropped, and other members of his group were intimidated.
 
 
 26
 If the jury found such testimony credible, it reasonably could have concluded that Sloman's political activity was a substantial or motivating factor in Hale's decisions to issue a citation and warnings to him, that the claimed reasons for the citation and warnings were groundless, and that such police conduct chilled the political expression of Sloman and his group. This is an adequate predicate to support liability against Hale under Sec. 1983.
 
 III. The City's Sec. 1983 Liability
 
 27
 Municipalities are liable for violations of civil rights under Sec. 1983 if such violations result from the "execution of a government's policy or custom." Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). We review the verdict against the City of Simi Valley for sufficiency of the evidence.
 
 
 28
 Sloman's only evidence of the existence of a police department "policy" of interfering with his political expression was a statement made by the Chief of Police to members of Sloman's political group. Concerned about previous encounters with the police, these persons came to the Chief to ask what activities members of their group were or were not permitted to engage in while picketing. After some discussion, he told them that in the future they would be subject to warnings if they were found to be violating any part of the City's vehicle code, but that Sloman would be subject to immediate citation, as he had already been warned in the past. The Chief made no other material statements concerning Sloman. No other direct evidence of City policy was adduced.
 
 
 29
 Standing alone, the Chief's statement is no evidence at all of an unconstitutional policy. There is no evidence to support Sloman's contention that the Chief singled out Sloman because of his political activities rather than his record of previous traffic violations. There is no evidence that the Chief meant that Sloman would be cited for political expression rather than for future violations of the vehicle code. The statement about Sloman should be read in context: first offenders would be warned rather than arrested for vehicle code violations, whereas Sloman, a prior offender, would be arrested for any such violation.
 
 
 30
 Sloman also contends that even if no express police "policy" of chilling his speech can be proved, the existence of ongoing police harassment based on his political beliefs is sufficient evidence of a police department "custom" of harassing him. Customary practices, if widespread among police employees, are a sufficient basis for municipal liability. Thompson v. City of Los Angeles, 885 F.2d 1439, 1443-44 (9th Cir.1989). However, despite general testimony that police were "constantly" present whenever Sloman was picketing, the only testimony concerning interactions between Sloman and specific police officers involved Hale and Rein. Officer Rein was found not to have violated Sloman's civil rights. Thus, although the jury reasonably found that Hale habitually harassed Sloman, there is no evidence credited by the jury that such practices extended beyond Hale even to Rein, much less to a wider group within the police department.
 
 
 31
 Individual action like Hale's does not rise to the level of the "well-settled," "widespread" practices contemplated in the cases discussing municipal liability. Id. at 1444 (citing cases). We hold that no reasonable jury could have found the evidence sufficient to impose Sec. 1983 liability on the City.
 
 IV. Jury Instructions
 
 32
 Defendants contend that the district court prejudicially erred by giving two of plaintiff's proposed jury instructions and by refusing to give three of defendants'. We review jury instructions as a whole to determine if they are misleading or inadequate. Oviatt v. Pearce, 954 F.2d 1470, 1480 (9th Cir.1992). We review de novo whether the instructions accurately state the applicable law. Caballero v. Concord, 956 F.2d 204, 206 (9th Cir.1992).
 
 
 33
 The district court gave plaintiff's supplemental proposed jury instruction "A," which stated
 
 
 34
 In order for the plaintiff to prevail on his claim you must find that the plaintiff's protected First Amendment conduct; that is, the expression of political opinion or engaging in political activities was a substantial factor, or was a motivating factor in the defendants' decisions to warn, ticket, and/or take plaintiff into custody. Plaintiff need not prove that the defendants' actions rested solely on the plaintiff's protected activities.
 
 
 35
 Defendants claim this instruction, adapted from the employment discrimination context, was an erroneous statement of the law, and was prejudicial because it "contradicts the requirement that a jury find by a preponderance of the evidence that a police officer's intentional conduct" caused a violation of defendant's civil rights. Appellants' Opening Brief at 31. Instruction A, however, is a correct statement of the law. See note 10 supra and accompanying text. Sloman's claim that Hale's actions were designed to retaliate against him and chill his protected speech requires an analysis similar to that which would be done in respect to a claim that an employer's actions were designed to accomplish the same purposes. Mendocino, 14 F.3d at 463-464; see also Mozzochi, 959 F.2d at 1179 (applying "motivating factor" analysis in civil rights lawsuit where plaintiff alleged police had harassed him in retaliation for his exercise of First Amendment rights); Gibson, 781 F.2d at 1338 (also characterizing this type of police behavior designed to chill speech as retaliation).
 
 
 36
 Defendants also complain that the court erroneously instructed on the excessive use of force. While it is true that excessive use of force had nothing to do with this case, the presence of such an instruction is hardly prejudicial, as the jury no doubt understood that it was irrelevant because no allegations of excessive force were ever made by Sloman.
 
 
 37
 Defendants claim that the court's failure to give a limiting instruction on the different standards of proof in criminal and civil cases was prejudicial, as the court allowed Sloman to enter into evidence his acquittal in the criminal trespass case stemming from the auto fair incident. In Borunda v. Richmond, 885 F.2d 1384, 1389 (9th Cir.1988), we noted that "[t]he state's failure to prove guilt beyond a reasonable doubt does not mean in connection with the arrests that it did not meet the lesser probable cause standard." Allowing proof of acquittal on criminal charges into evidence in a related civil case may thus constitute an abuse of discretion if not limited by careful jury instructions. Id. In this case, however, we find no reversible error. First, Sloman's acquittal was not introduced as proof that he was improperly arrested at the auto fair. It was introduced for the specific and limited purpose of rebutting the defendants' contention that he had a vindictive motive for pursuing the present civil rights lawsuit. That is, Sloman introduced his acquittal to corroborate his claim that his motive in bringing the civil rights suit was recovery of the costs incurred in defending against the criminal charges. Second, Hale's arrest of Sloman was in any event based not on his own observations at the fair, but on the reports from Tadlock and Allen. While this might have presented the possibility that the jury would have used Sloman's acquittal to draw improper inferences concerning Tadlock's and Allen's behavior, this was not the case with respect to Hale. We conclude that at the most, the district court's failure to give the proposed instruction was harmless error.
 
 
 38
 Defendants also claim that the district court abused its discretion in not instructing the jury to disregard Sloman's evidence concerning his emotional distress and attorney's fees resulting from the related criminal prosecution. However, the court specifically forbade Sloman to present these as items of damage, and there is no indication that he did so or that the jury considered them as such.
 
 
 39
 Finally, defendants claim that the district court abused its discretion by refusing to give an instruction which "admonished the jury not to assess damages based on the perceived abstract value of a constitutional right." Appellant's Opening Brief at 30. Defendants are correct that damages in Sec. 1983 actions are not to be assessed on the basis of the abstract "value" or "importance" of the infringed constitutional right. Memphis Community School Dist. v. Stachura, 477 U.S. 299, 310, 106 S.Ct. 2537, 2544, 91 L.Ed.2d 249 (1986). The district court was aware of this, but concluded that its instruction prohibiting speculative damages would suffice to stop the jury from awarding damages based on the abstract value of Sloman's infringed rights. Considering the instructions as a whole, we find no abuse of discretion.[11]
 
 V. Evidentiary Rulings
 
 40
 Defendants challenge several evidentiary rulings. We review evidentiary rulings, other than those implicating claims of due process violations, for abuse of discretion, and reverse only upon a showing of prejudice. See McGonigle v. Combs, 968 F.2d 810, 818 n. 6 (9th Cir.), cert. dismissed, --- U.S. ----, 113 S.Ct. 399, 121 L.Ed.2d 325 (1992).
 
 
 41
 Defendants claim the court erred in admitting testimony from Cynthia Pandolfi regarding the incident in which Hale pulled her over and criticized the political content of her bumper sticker, as well her testimony regarding a subsequent conference between her husband and the Chief of Police (the Pandolfis complained to the Chief about the bumper sticker incident), and her testimony regarding an altercation between Sloman and a construction worker, when police were allegedly slow to come to Sloman's aid.
 
 
 42
 All of this testimony was admitted because it related to the conspiracy and municipal liability charges made by Sloman and tried with his Sec. 1983 claims against Hale and Rein. See, e.g., TT at 203 (district court stating "we have gone beyond just the context between this plaintiff and these two named officers now in this phase of the case"). Because Mrs. Pandolfi's testimony was directly relevant to these broader claims, its admission was not an abuse of discretion.
 
 
 43
 Defendants also contend that the district court erred in forbidding impeachment of nonparty witnesses, specifically Cynthia Pandolfi, with prior inconsistent testimony.[12] See Wood v. Stihl, 705 F.2d 1101, 1109 (9th Cir.1983) (district court erred in placing limits on counsel's use of prior inconsistent statements to impeach witnesses). Here, the district court did not interfere with defense counsel's confrontation of the witness with prior inconsistent statements. The court simply required counsel to question in an appropriate manner: first to let the witness read her prior statement to herself, and then to ask her questions about the seeming inconsistency between the prior statements and her statements at trial. Proceeding in this fashion was not an abuse of discretion.
 
 VI. Damage Awards Against Hale and the City
 
 44
 Defendants contend that the compensatory and punitive damages awarded by the jury were not supported by sufficient evidence, primarily because Sloman failed to show that the alleged constitutional violations were the proximate cause of his injuries. Sloman counters that defendants waived their right to appeal this issue when they failed to make a motion under Fed.R.Civ.P. 50(b) at the close of the evidence at trial. We must address this contention as an initial matter.
 
 
 45
 A rule 50(b) motion for a judgment as a matter of law is a "threshold requirement" for a later motion for a JNOV. Lifshitz v. Walter Drake & Sons, Inc., 806 F.2d 1426, 1428 (9th Cir.1986). "If no motion for directed verdict has been made, a motion for judgment notwithstanding the verdict has no legal effect." Collins v. City of San Diego, 841 F.2d 337, 342 (9th Cir.1988); see Williams v. Fenix & Scisson, Inc., 608 F.2d 1205, 1207 (9th Cir.1979). Defendants claim, however, that under Cabrales v. County of Los Angeles, 864 F.2d 1454 (9th Cir.), vacated on other grounds, 490 U.S. 1087, 109 S.Ct. 2425, 104 L.Ed.2d 982 (1989), we may nonetheless review the jury's verdict for plain error. Cabrales discussed the "only exception" to the rule that a party who has not made a rule 50(b) motion cannot question the sufficiency of the evidence on appeal:
 
 
 46
 Only where there is such plain error apparent on the face of the record that failure to review would result in a manifest miscarriage of justice should the appellate court analyze the evidence.
 
 
 47
 Id. at 1459 (citation omitted). The Cabrales court noted that this was an "extraordinarily deferential standard of review," under which an appellate court should not scrutinize the sufficiency of the evidence unless "there is an absolute absence of evidence to support the jury's verdict." Id.
 
 
 48
 Since there was testimony at trial regarding various symptoms suffered by Sloman, as well as the connection between them and the alleged incidents of harassment by Hale, there was not an "absolute absence of evidence" to support the jury's finding that Hale's and the City's violations of Sloman's civil rights caused the injuries for which it compensated him. We therefore must affirm the damage awards.[13]
 
 VII. Sloman's Cross-Appeal
 
 49
 A. The District Court's Summary Judgment Order Dismissing Defendants Tadlock and Allen
 
 
 50
 Tadlock and Allen were private citizens who signed a citizen's complaint in order to get police assistance in removing Sloman from the Auto Fair. The district court granted their summary judgment motion and dismissed all claims against them.[14] Order of September 18, 1989. Summary judgment orders are reviewed de novo to determine whether genuine issues of material fact existed. Jones v. Union Pacific R.R., 968 F.2d 937, 940 (9th Cir.1992).
 
 
 51
 A police report written by Hale stated that Tadlock and Allen contacted him and Rein at the fair to see if there was any way to remove Sloman, because of the alleged disturbance he was creating. The officers told Tadlock and Allen that one of the booth holders at the fair would have to ask Sloman to leave, and then, if he continued to cause a disturbance, he could be arrested for trespassing. After talking with Sloman again and asking him to leave, Tadlock and Allen signed a citizen's complaint form.
 
 
 52
 Sloman cites Tadlock's deposition testimony that one of the reasons he initially asked Sloman to leave the fair was "more than likely" that Tadlock was opposed to the political sentiment conveyed by a sign Sloman was carrying at the time. Appellee's Opening Brief at 46. Sloman also characterizes the discussions between Officers Rein and Hale and citizens Tadlock and Allen as a process of "conceiving of a crime for which [Sloman] could be arrested." Appellee's Reply Brief at 5. Sloman also asserts that except for the testimony of Tadlock and Allen, there was no evidence that Sloman was causing any sort of disturbance.
 
 
 53
 With regard to Allen, the grant of summary judgment was appropriate because Sloman presented no direct or circumstantial evidence that Allen participated in the arrest process because of Sloman's political beliefs. Tadlock's deposition testimony, however, is sufficient to raise a genuine issue of fact as to whether he was motivated to sign the citizen's complaint because of Sloman's political beliefs. Moreover, Sloman has succeeded in raising a genuine issue of fact as to whether there was probable cause to arrest him. See Usher v. City of Los Angeles, 828 F.2d 556, 561-62 (9th Cir.1986) (lack of probable cause required to make out a claim of malicious prosecution under California law). He has also raised a genuine issue of fact as to whether Tadlock was engaged in "joint action" with Hale and Rein, thus satisfying the state action requirement of his claims under 42 U.S.C. Sec. 1983. See Collins v. Womancare, 878 F.2d 1145, 1154 (9th Cir.1989), cert. denied, 493 U.S. 1056, 110 S.Ct. 865, 107 L.Ed.2d 949 (1990).
 
 
 54
 We conclude that the grant of summary judgment in Tadlock's favor was erroneous.
 
 
 55
 B. The District Court's Summary Judgment Finding that the Ventura County District Attorney's Office Exercised Independent Judgment in Prosecuting Sloman for Trespass
 
 
 56
 At trial, Sloman sought to put into evidence the attorneys' fees he spent defending the criminal trespass prosecution which grew out of his citizen's arrest at the auto fair. Attorneys' fees expended in defending a criminal prosecution are not recoverable from the arresting officers in a related Sec. 1983 action if the prosecutor exercised independent judgment in deciding to prosecute. Barlow v. Ground, 943 F.2d 1132, 1136 (9th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 2995, 120 L.Ed.2d 872 (1992); Borunda, 885 F.2d at 1390. However, the prosecutor's judgment will be deemed not independent, and fees will thus be recoverable, if the prosecutor was misled by material omissions or false information given by the arresting officers. Barlow, 943 F.2d at 1136; Borunda, 885 F.2d at 1390.
 
 
 57
 The prosecutors who filed the case against Sloman, Jay Orr and David Doyle, both submitted affidavits stating that they had exercised independent judgment in filing the case. They admitted, however, that they based their judgment exclusively on the police reports submitted by Officers Hale and Sliester. The district court made a summary judgment finding that Orr and Doyle had exercised independent judgment in deciding to prosecute Sloman. Order of August 1, 1989, at 2. The court did not expressly consider Sloman's allegations that the police reports on which the prosecutors based their decision to prosecute were fabricated by Officers Hale and Rein, and thus that the prosecutors were incapable of exercising independent judgment.
 
 
 58
 Sloman did not and does not point to any evidence of such fabrication, other than the fact that the officers' reports were inconsistent with Sloman's own account of the incidents leading to his arrest. Such conclusory allegations, standing alone, are insufficient to prevent summary judgment. In Barlow and Borunda, by way of contrast, the police reports on which the prosecutors relied contained demonstrable omissions, were contradicted by other police reports, and, most importantly, were contradicted by independent witnesses who corroborated the plaintiff's version of events. Barlow, 943 F.2d at 1137; Borunda, 885 F.2d at 1390.
 
 
 59
 While it is true that the jury's verdict against Hale, which we today affirm, might lend support to Sloman's allegations, we have no proof that the verdict necessarily rested on findings that Hale lied about events at the Auto Fair. Indeed, Sloman's Auto Fair allegations are a relatively minor part of his case, and were not essential to his Sec. 1983 charges against officer Hale. Regarding the sign-waiving and walk-button-pushing incidents, Sloman has supporting testimony from a number of witnesses; here, however, he has only his own word.
 
 
 60
 We conclude that Sloman has not succeeded in demonstrating that there is a genuine issue of fact with regard to whether the prosecutors exercised independent judgment, and therefore affirm the district court's holding.
 
 C. Attorneys' Fees
 
 61
 After the jury returned a verdict for Sloman on the Sec. 1983 claims against Hale and Simi Valley, the district court granted his motion for attorneys' fees pursuant to 42 U.S.C. Sec. 1988.[15] The court calculated the fees using a method submitted by defendants in their memorandum opposing Sloman's fees motion. Sloman cross-appeals the fee award, arguing it is too small. We review for abuse of discretion. Oviatt, 954 F.2d at 1481.
 
 
 62
 The method of fee-calculation suggested in defendants' brief and adopted by the district court involved two main steps: reducing the number of hours actually spent by Sloman's attorneys to a "reasonable" figure, and reducing the fee claimed by Sloman's attorney to a "reasonable" rate. The former was done to account for the fact that many of Sloman's claims were neither successful nor closely related to those upon which he prevailed. The latter was done on the basis of affidavits of other attorneys in the area describing their level of experience and the fees they usually charge. The district court also considered other factors such as the complexity of the case.
 
 
 63
 These procedures were in accord with the law and within the district court's discretion. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). In determining what is "reasonable" in both parts of the lodestar calculation, the court may reduce the hours actually spent or the hourly rate actually charged in order to account for factors such as those considered by the district court in this case. Cabrales, 864 F.2d at 1464-66; Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir.), cert. denied, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976).
 
 
 64
 We express no opinion as to whether our vacation of the judgment against the City and our reversal of the dismissal of Tadlock at the summary judgment stage should affect the amount of Sloman's fee award. We recognize, however, that the district court might no longer consider the amount of its fee award appropriate. We therefore vacate the fee award and remand to allow the district court the opportunity to redetermine the fee award, if in its discretion it decides that would be the proper course.
 
 CONCLUSION
 
 65
 We reverse the imposition of Sec. 1983 liability against the City and the summary judgment dismissing Tadlock, and remand for a redetermination of attorneys' fees. On all other issues raised by the appeal and cross-appeal, we affirm.
 
 
 66
 AFFIRMED, in part, REVERSED, in part, and REMANDED.
 
 
 
 *
 Honorable Hubert L. Will, Senior United States District Judge for the District of Illinois, sitting by designation
 
 
 [1]
 Hale and Rein happened to be on a special assignment, working at the Police Department booth at the fair
 
 
 [2]
 He was later prosecuted for the violation and eventually won a full acquittal. He contends that one reason he brought his civil rights suit was to recover the money he spent defending the criminal case
 
 
 [3]
 After one day of trial, counsel for both parties engaged in an extended colloquy with the district court about the way in which the qualified immunity determination should be made. Defense counsel claimed that the immunity determination ordinarily should be made prior to trial, and should in any event be made by the judge rather than the jury: "the court should have determined long ago whether these people acted reasonably within the immunity standard." Trial Transcript (TT) at 123. The court responded, "[n]ot really. Because, if indeed, the Court can't, where the facts are controverted, make that determination prior to trial, then ... we ought to let the jury make the determination." Id. The issue arose again later, when the court denied defendant's motion for judgment as a matter of law on all the issues, including immunity, saying, "this is a matter that should go to the jury." Id. at 777
 
 
 [4]
 This led Judge Norris to suggest in dissent that the majority's holding will necessitate the judge's soliciting a special verdict from the jury on the factual issues necessary to the qualified immunity determination, and then deciding whether, based on the jury's findings, the officer could reasonably have believed that he or she was not violating plaintiff's clearly established constitutional rights. Id. at 876 (Norris, J. dissenting from failure of court to hear case en banc)
 
 
 [5]
 E.g., Hunter, --- U.S. at ----, 112 S.Ct. at 536; Mitchell v. Forsyth, 472 U.S. 511, 516-17, 105 S.Ct. 2806, 2810, 86 L.Ed.2d 411 (1985); Harlow, 457 U.S. at 305-06, 102 S.Ct. at 2451-52
 
 
 [6]
 Indeed, we note that at this point in such a case, qualified immunity can no longer rightly be called an "immunity from suit" (since the suit has already proceeded to its conclusion); rather, it is now effectively a defense
 
 
 [7]
 This distinguishes the present case from excessive force cases, for instance, where the defendant's conduct is evaluated under an objective "reasonableness" standard. See Branch v. Tunnell, 937 F.2d 1382, 1385-86 (9th Cir.1991) (discussing tension between objective focus of immunity inquiry and necessity of examining defendant's subjective intent when it is an element of the alleged constitutional tort; adopting heightened pleading standards for such cases)
 
 
 [8]
 We note that under the "special verdict" approach that may develop if Act Up! is read to require judge-made immunity determinations even where a case has progressed to trial, appellate review of qualified immunity determinations would necessarily be bifurcated. The jury's special, factual verdicts would be reviewed for sufficiency of the evidence, as we do here. See Vaughan v. Ricketts, 950 F.2d 1464, 1468 (9th Cir.1991). The district court's ultimate, legal determination as to whether immunity should be granted, on the other hand, would have to be reviewed de novo. See Sepulveda v. Ramirez, 967 F.2d 1413, 1415 (9th Cir.1992)
 
 
 [9]
 The analysis we employ here does not apply to cases where the jury's verdict does not necessarily rely on factual findings which are determinative of the immunity issue. In such cases district courts may be required to solicit special verdicts on the factual issues needed to determine entitlement to qualified immunity
 
 
 [10]
 We note that in this type of action the defendant's motive is relevant, and that plaintiff's burden of proof is similar to that set out in cases where an employer's adverse employment action is alleged to be due to plaintiff's First Amendment activities. See, e.g., id.; Mozzochi v. Borden, 959 F.2d 1174, 1179 (2nd Cir.1992) (applying employment-based "retaliation" framework in First Amendment case alleging police harassment due to plaintiff's exercise of free speech rights); McKinley v. City of Eloy, 705 F.2d 1110 (9th Cir.1983) (discussing proof requirements where employee claimed he was dismissed because of political speech and action)
 
 
 [11]
 We note, in this regard, that in Stachura the trial court specifically instructed the jury to consider the abstract value of constitutional rights in computing its damage award, rather than, as here, simply omitting to tell the jury not to do so. Stachura, 477 U.S. at 302-03, 106 S.Ct. at 2540-41
 
 
 [12]
 Defendants point to two instances during the trial. In the first incident, Mrs. Pandolfi testified at trial that Officer Hale told her that the "real reason" he pulled her over was to criticize her political views. Defense counsel asked the court if he could read from her deposition, in which she did not use the phrase "real reason," explaining that he wished to impeach her with a prior inconsistent statement. The district court appropriately refused to let him, because "the witness is not a party to this," and instead suggested, "let her read it first [to herself] and then ask her a question." TT at 224-25
 In the second incident, defense counsel tried to point out the inconsistency between Mrs. Pandolfi's answer at trial to the question "were you campaigning with a hand-held sign?" (answer: "yes and no") and her deposition answer ("yes"). Again, the court blocked his introducing parts of the deposition because she was "not a party to this," and instructed defense counsel, "either proceed in the fashion I have just told you, or you don't proceed at all." Id. at 230-31. Defense counsel then asked the witness to read her deposition testimony to herself, and asked her if she had not offered an unqualified "yes" to the question at her deposition. She agreed.
 
 
 [13]
 With respect to the $350 punitive damages award against Officer Hale, we note that punitive damages will often be appropriate where, as here, the theory of liability is based upon defendant's subjective intentions
 
 
 [14]
 The claims consisted of two Sec. 1983 claims (for false arrest and deprivation of free speech) and four state pendant claims (false imprisonment, malicious prosecution, abuse of process, and emotional distress)
 
 
 [15]
 Under that provision, "the court, in its discretion, may allow the prevailing party [in a civil rights suit] ... a reasonable attorney's fee as part of the costs." 42 U.S.C. Sec. 1988(b) (Supp.1993)