46 F.3d 1144
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Gustavo PONCE, Plaintiff-Appellant,
v.
Hugh LLOYD; R. Green; Ernie Magana; Sherman Block, Sheriff;
County of Los Angeles, et al., Defendants-Appellees.
 No. 93-55312.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted: Aug. 3, 1994.
Decided: Jan. 25, 1995.
 
 1
 Before: O'SCANNLAIN and T.G. NELSON, Circuit Judges, and MERHIGE,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 The parties are familiar with the facts and the prior proceedings, so we need not recite them here. We affirm in part, vacate and remand in part, and reverse and remand in part.
 
 I. THE DISMISSAL OF SHERIFF BLOCK
 
 4
 Ponce's complaint demonstrates that the suit was brought against Block in his official capacity only. The caption indicates the case was brought against "SHERMAN BLOCK, Sheriff of Los Angeles County," while the other individual defendants were sued "individually and as officials of the County of Los Angeles." The allegations against Sheriff Block in the complaint relate to his official capacity. "Official capacity suits generally represent only another way of pleading an action against the entity of which the officer is an agent." Chew v. Gates, 27 F.3d 1432, 1446 n.15 (9th Cir. 1994) (citing Kentucky v. Graham, 473 U.S. 159, 165 (1985)), petition for cert. filed, 63 U.S.L.W. 3463 (U.S. Nov. 28, 1994) (No. 94-980); see also Hafer v. Melo, 502 U.S. 21, 112 S. Ct. 358, 361-62 (1991). Thus, the district court was correct in dismissing the action as duplicative of the cause of action against the county. See id.
 
 
 5
 We find no abuse of discretion in the court's denial of leave to amend the complaint to name Sheriff Block in his individual capacity. "A district court does not err in denying leave to amend where the amendment would be futile, or where the amended complaint would be subject to dismissal." Saul v. United States, 928 F.2d 829, 843 (9th Cir. 1991) (citations omitted). In this case Sheriff Block would be entitled to qualified immunity. See Chew, 27 F.3d at 1446-50. Therefore, an amended complaint naming Block in his individual capacity would be subject to dismissal. The amendment could not "overcome the fundamental futility of the claim[]." Saul, 928 F.2d at 843.
 
 II. SUMMARY JUDGMENT
 A. Malicious Prosecution
 
 6
 Ponce's claim of malicious prosecution was based on his allegation that Deputies Lloyd, Magana and Green falsified reports after the dog attack to ensure that Ponce was charged with robbery. The district court properly granted the motion for summary judgment on this claim, because Ponce did not proffer sufficient evidence to establish that the deputies lacked probable cause, an element essential to the tort of malicious prosecution. Amwest Mortgage Corp. v. Grady, 925 F.2d 1162, 1164 (9th Cir. 1991); Villa v. Cole, 6 Cal. Rptr. 2d 644, 648 (Ct. App. 1992).
 
 
 7
 Ponce contends that there is a factual question as to whether there was probable cause to arrest him, and that summary judgment was inappropriate because it was based on a credibility determination. Assuming without deciding that this malicious prosecution claim is cognizable under section 1983, see Albright v. Oliver, 114 S. Ct. 807, 811 (1994); Usher v. City of Los Angeles, 828 F.2d 556, 561-62 (9th Cir. 1987), we reject Ponce's claim of error. According to Ponce, Deputy Magana brought the victim of the robbery to the police car Ponce was sitting in, and after Magana spoke with the victim, he shook his head from side to side. According to Magana, the victim did identify Ponce as one of his robbers. However, Ponce was identified by the officers as one of the people running from a well-lighted scene. As the district court observed, Ponce's "allegations that Deputies Green and Magana only saw [Ponce] in a poorly lighted area and at a distance of two blocks from the incident is unsupported and unsubstantiated."
 
 
 8
 Viewing the evidence in the light most favorable to Ponce and assuming the victim did exonerate him, this does not impeach the deputies' identification of Ponce as one of the robbers, and it does not impede a determination of probable cause. Nor does it constitute a credibility determination on the part of the district court. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).
 
 
 9
 Ponce also contends that even if there were probable cause to arrest him, there was not probable cause to charge him with robbery. He argues that the prosecutor's intervening probable cause determination does not insulate the deputies because they knowingly submitted false information to the prosecutor. See Smiddy v. Varney, 803 F.2d 1469, 1471 (9th Cir. 1986), modified on other grounds, 811 F.2d 504 (9th Cir. 1987). However, Ponce provided no support for the allegation that the deputies submitted false information. He failed to establish the necessary element of absence of probable cause and we therefore affirm the grant of summary judgment. See Anderson, 477 U.S. at 250 (once moving party meets summary judgment burden, opposing party must set forth specific facts showing that there is a genuine issue for trial).
 
 
 10
 We also affirm the district court's denial of Ponce's motion for reconsideration of this ruling. His motion was based on allegedly newly discovered evidence, including a reenactment, aerial photographs, and police radio communications. The court explained that the difficulty in guaranteeing accuracy in a reenactment and the use of unsubstantiated hearsay in the process did not give rise to any material fact that would warrant a reconsideration. Furthermore, the court noted that the information could have been discovered before the summary judgment hearing. The court found that the tape transcript was of minimal relevance and that it would not have been likely to change the disposition of the case. The court found that the photographs were cumulative evidence which was not newly discovered. There was no abuse of discretion in the court's ruling.
 
 B. Excessive Force
 
 11
 Ponce's complaint alleged the use of "unreasonable, unnecessary and excessive force to seize the plaintiff, and ... without provocation, necessity or legal justification, using an attack dog on plaintiff ...." Ponce testified at his deposition that during his arrest, he was kicked in the head and the back.[1] He could not identify which deputy kicked him while he was on the ground with the dog.
 
 
 12
 Ponce contends that the district court improperly granted summary judgment in favor of Deputies Greene and Magana on the excessive force claims because they were liable for failure to intervene to prevent the use of excessive force. At the outset, we reject Ponce's argument, based on out-of-circuit case law, that Greene and Magana should have remained in the case on the basis of potential liability for failing to intervene in the dog attack, or to prevent the hit or kick to Ponce. See Bruner v. Dunaway, 684 F.2d 422, 426 (6th Cir. 1982), cert. denied, 459 U.S. 1171 (1983); Webb v. Hiykel, 713 F.2d 405, 408 (8th Cir. 1983). As we explain below, there was a failure of proof concerning any section 1983 liability on the part of Deputy Greene. However, the district court did not make any findings with respect to Ponce's claim that he was kicked during his arrest and we conclude that a jury question remained concerning Deputy Magana's participation in kicking Ponce during the arrest.
 
 
 13
 1. Deputy Greene.
 
 
 14
 Ponce testified at his deposition that Deputy Greene, a trainee patrol officer at the time of this incident, was nice to him and did not hit him in any way or slap him, but was courteous and professional towards him. We hold that there was a failure of proof as to Greene's section 1983 liability in this case, and we affirm the summary judgment in his favor on the excessive force claim.
 
 
 15
 2. Deputy Magana.
 
 
 16
 It is undisputed that Magana, Greene and Lloyd were present when Ponce was arrested. Genuine issues of material fact remain concerning the kicking of Ponce during the arrest. In view of the failure of proof concerning Greene, this leaves Magana or Lloyd or both as the person(s) who allegedly kicked Ponce. Construing the evidence in the light most favorable to Ponce, he was not in a position to identify his attacker because of the manner in which the police were arresting him.[2] Ponce bears the burden of proving each essential element of his section 1983 claim, including the identity of the person, acting under color of state law, who allegedly violated his federally protected rights. See 42 U.S.C. Sec. 1983. However, Ponce presented evidence implicating both Magana and Lloyd. We conclude that under the circumstances, Ponce made a sufficient showing of identity to survive a motion for summary judgment. To hold otherwise places an impossible burden of proof on Ponce.
 
 
 17
 Ponce raised a triable issue with regard to Magana and Lloyd kicking him. The jury verdict in favor of Lloyd is immaterial, because, as we explain in Section IV(B), we reverse the jury verdict based on erroneous and prejudicial jury instructions.
 
 C. Los Angeles County
 
 18
 Ponce did not brief any issue regarding the dismissal of the County. In his reply brief, Ponce formally withdrew the issue of whether the district court erred in bifurcating the trials. Assuming without deciding that Ponce's amended notice of appeal[3] was sufficient to cover the court's dismissal of the County following the jury verdict in Lloyd's favor, see Roberts v. College of the Desert, 870 F.2d 1411, 1418-19 (9th Cir. 1988); Fed. R. App. P. 3(c); see also Lockman Found. v. Evangelical Alliance Mission, 930 F.2d 764, 772 (9th Cir. 1991), the failure to brief this issue means it has been waived. Officers for Justice v. Civil Serv. Comm'n, 979 F.2d 721, 726 (9th Cir. 1992), cert. denied, 113 S. Ct. 1645 (1993).
 
 III. STATE LAW CLAIMS
 
 19
 The district court dismissed Ponce's pendent state claims[4] without prejudice. In Executive Software N. Am., Inc. v. United States Dist. Court, 24 F.3d 1545 (9th Cir. 1994), we held that "a court can decline to assert supplemental jurisdiction over a pendent claim only if one of the four categories specifically enumerated in [28 U.S.C. Sec.] 1367(c) applies." Id. at 1555-56. The court must "properly invoke[] a section 1367(c) category in exercising its discretion to decline to entertain pendent claims." Id. at 1556. We vacate the order of dismissal of the state law claims and remand this portion of the case to the district court for a reexamination of the four section 1367(c) categories in accordance with Executive Software. See id. at 1555-61. If the court again declines to exercise supplemental jurisdiction, it must articulate which category it is relying on. Id. at 1556, 1561.
 
 IV. ALLEGED TRIAL ERRORS
 
 20
 Ponce contends that the judgment on the verdict in favor of Deputy Lloyd should be reversed and the case remanded for a new trial because of error in the exclusion of evidence and in the jury instructions. We disagree that there was error in the court's evidentiary rulings, but hold that the district court abused its discretion in the formulation of the jury instructions concerning the use of the dog. There was also error in the formulation of the qualified immunity instructions. These errors were prejudicial to Ponce's case.
 
 A. Evidentiary Rulings
 
 21
 The district court's in limine and trial rulings prohibited Ponce from introducing into evidence prior and subsequent acts of Deputy Lloyd. The exclusion of this evidence was proper. See Gates v. Rivera, 993 F.2d 697, 700 (9th Cir. 1993) ("Character evidence is normally not admissible in a civil rights case."). We also find no abuse of discretion in the court's refusal to allow evidence of other bites by dogs under Lloyd's control, or of other bites by other dogs used by the County. "The question to be resolved was whether, objectively, [Lloyd's] use of force had been excessive. His past conduct did not bear on this issue." Id. (citing Graham v. Connor, 490 U.S. 386, 395 (1989)). While this evidence would be admissible in a Monell action against the County, see Larez v. City of Los Angeles, 946 F.2d 630, 646-47 (9th Cir. 1991), it was properly excluded from the trial against an individual deputy.
 
 
 22
 The district court also properly excluded the Kolts Commission Report. According to Ponce, the worst of the five deputies profiled in the report, "Deputy A," has been identified as defendant Lloyd. The district court observed, however, that this connection between "Deputy A" and Lloyd was "unsupported speculation." The district court also disallowed the Kolts Report on the basis that it contained hearsay. The district court was well within its discretion in so ruling.
 
 B. Jury Instructions
 
 23
 Ponce argues that the court should not have given full instructions on probable cause and then instructed the jury as a matter of law that Lloyd had probable cause to arrest him. According to Ponce, these instructions had the effect of informing the jury that Ponce's allegations were false and of minimizing his contention that Greene and Magana's story of identifying Ponce was invented.
 
 
 24
 The district court explained its formulation of the probable cause instructions as follows:
 
 
 25
 I'm going to add in here that "You are instructed ... as a matter of law that ... there was probable cause to arrest the Plaintiff." ... [B]ut I'm going to give them all the instructions so that they get a clear picture of exactly what the case was about, because we talked about probable cause early in the case when I preinstructed them. And if they ask a question why, they're going to understand as a matter of law. Just like as they were acting under color of authority as a matter of law.... [T]he reason I'm going to give it is because of the fact that when I gave the original instructions and a factual analysis of the case, I told them that the Plaintiff was proceeding under two theories: one, the probable cause to arrest, and two, the unnecessary, unreasonable or excessive force.
 
 
 26
 Ponce does not directly contend, nor could he in view of the record, that the district court erred in determining that probable cause existed as a matter of law. His argument is premised on juror confusion, and we reject this argument. In view of the explanation provided by the court to the parties, we find no abuse of discretion in the court's probable cause instructions.
 
 
 27
 We do agree with Ponce, however, that the canine instructions were erroneous, and that the error was not harmless. The jury was instructed as follows:
 
 
 28
 The use of a properly trained police dog to apprehend a felony suspect does not carry with it a substantial risk of causing serious bodily harm. It is not unreasonable to use a properly trained police dog. Police dogs often help prevent officers from having to resort to, or being subjected to, deadly force. Any attempt to apprehend a criminal suspect presents the officer with a difficult and frightening situation, but certainly an attempt to arrest the suspect hidden inside unfamiliar surroundings during the night time presents a particularly confusing one. The use of properly trained police dogs can make it more likely that the officers can apprehend suspects without the risks [attendant] to the use of firearms in the darkness, thus, frequently enhancing the safety of the officers, bystanders and the suspect.
 
 
 29
 ....
 
 
 30
 The use of a police dog to search for, find and seize a felony suspect, by biting if necessary, is objectively reasonable and does not per se violate the suspect's constitutional rights.
 
 
 31
 Whether or not the use of the dog was reasonable in this case was the question the jury was to decide. See Chew, 27 F.3d at 1441, 1443; see also id. at 1448-49; Mendoza v. Block, 27 F.3d 1357, 1362 (9th Cir. 1994) ("under some circumstances the use of such a 'weapon' [a dog] might become unlawful"). Ponce also argues that the jury heard no evidence at all to show whether the dog had been trained at all, or "properly" trained. Deputy Lloyd testified that his dog Lax always obeys a command and that he was trained well enough to immediately come off the bite. He also testified about the training of L.A. County police dogs to use a full-mouth bite. The defense's expert witness also testified concerning the training of police dogs. But Ponce is correct that there was no direct evidence that Lax was "properly" trained. The statement that use of a properly trained dog "does not carry with it a substantial risk of causing serious bodily harm" is not necessarily true, and in any event, is a factual question to be left to the jury.
 
 
 32
 Ponce argues that no evidence in the case supports the instruction language concerning dogs preventing situations of deadly force, the "difficult and frightening situation" faced by officers, or the enhancement of safety to officers, bystanders and suspects through use of a dog. We disagree. Deputy Lloyd testified that use of the dog was "the safest and most effective method" in a case like this. The defense's expert witness testified at some length about these subjects.
 
 
 33
 Ponce next takes issue with the qualified immunity instructions, contending that they were unnecessary, inaccurate, confusing, and gave undue emphasis to the doctrine. Lloyd argues that this point is moot because the jury never reached the question of qualified immunity in light of its answer to the first question on the special verdict form: That Ponce's constitutional rights were not violated. The issue of qualified immunity does not arise where there was no violation of a statutory or constitutional right. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). However, it is likely that the district court will have to confront this issue on remand, and we therefore address Ponce's contentions.
 
 
 34
 Ponce is correct that ordinarily qualified immunity is not before a jury because the court usually decides immunity questions before trial. Sloman v. Tadlock, 21 F.3d 1462, 1467-68 (9th Cir. 1994). In this case, however, Lloyd's immunity turned on the resolution of disputed facts concerning "what the officer and claimant did or failed to do." Id. at 1467 (internal quotation omitted); see also id. at 1468 (leaving open the question of whether judge or jury should be the ultimate decider once disputed foundational facts have been decided by the jury). The district court's denial of Lloyd's motion for summary judgment means Lloyd was not entitled to qualified immunity from suit, but the defense of qualified immunity remained. See id. at 1468; see also Chew, 27 F.3d at 1439; Act Up!/Portland v. Bagley, 988 F.2d 868, 873 (9th Cir. 1993). Jury instructions on qualified immunity were therefore not "unnecessary."
 
 
 35
 Ponce is also correct that the proper standard for qualified immunity is an objective one: Public officials "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818; see also Sloman, 21 F.3d at 1467-69 (the jury is to decide the reasonableness of an officer's conduct in light of the factual context in which it takes place); Act Up!, 988 F.2d at 871-73 (the question is whether a reasonable officer in defendant's position could have believed his actions were lawful). "This determination does not, however, entail an inquiry into the officer's subjective intentions; merely his knowledge." Act Up!, 988 F.2d at 873 n.3.
 
 
 36
 The district court instructed the jury that "[i]f defendant reasonably believed he was acting pursuant to the laws of the State of California and acted in good faith on the basis of this belief, then his reasonable belief and good faith action would constitute a defense to the plaintiff's claim of unlawful use of force." Ponce argues that this instruction permitted the jury to find for Lloyd on the basis of his subjective "good faith" belief.
 
 
 37
 We agree that the instruction is confusing because it lacks focus on the objective reasonableness of the particular conduct at issue. The question is not whether Lloyd reasonably believed his actions were lawful, but whether a reasonable officer in Lloyd's position could have believed his actions were lawful. See Sloman, 21 F.3d at 1467; see also Harlow, 457 U.S. at 819 ("Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate ...." (emphasis added)). Question number two on the special verdict form was more on the mark: "Do you find, by a preponderance of the evidence, that defendant, Deputy Hugh Lloyd, acted in a good faith belief that his actions were lawful and that a reasonable police officer could have believed that his actions were lawful as defined in the instructions?" (Emphasis added.) However, the jury never reached question number two.
 
 
 38
 While the instruction did not necessarily encourage inquiry into Lloyd's subjective intentions, it was unclear enough to be potentially misleading. This problem was compounded when this particular jury instruction was inadvertently read twice to the jury.
 
 
 39
 The court's other qualified immunity instruction does not provide particular clarification on objective reasonableness. The court also instructed the jury that:
 
 
 40
 Qualified immunity protects law enforcement officers in cases in which they reasonably, but mistakenly conclude that probable cause is present. Actual probable cause, therefore, is not necessary for an arrest to be objectively reasonable. Under this standard, public officials are protected except the plainly incompetent and those who are deemed to have knowingly violated the law.
 
 
 41
 (Emphasis added.) Ponce argues that the last sentence of this instruction incorrectly states the law. The Supreme Court has stated that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). Ponce points out that the addition of the phrase "are deemed to have" left open the permissible interpretation that the district court had "deemed" that Lloyd had complied with the law, because prior to giving this instruction, it instructed the jury that there was probable cause to arrest Ponce. The argument has merit. Confusion can be avoided at a possible retrial by omitting the phrase "are deemed to have."
 
 
 42
 We reject Ponce's argument that the particular phrasing of these instructions in conjunction with the form of the special verdict leaves questions open as to whether or not the jury may have believed that if they found Lloyd was entitled to qualified immunity, they should find there was no violation of plaintiff's rights. The special verdict form instructed the jurors to answer the qualified immunity question only if they found by a preponderance of the evidence that Lloyd had violated Ponce's constitutional and statutory rights. If the case against the County had not been bifurcated, the jury instruction formulation would have been different. See, e.g., Chew, 27 F.3d at 1444-46. However, Ponce's speculation concerning what the jury might have done if the County's liability was before them does not demonstrate any deficiency in the special verdict form or add to the analysis of the qualified immunity instructions.
 
 CONCLUSION
 
 43
 We affirm the district court's dismissal of the action against Sheriff Block and the denial of leave to amend the complaint. We affirm the district court's grant of summary judgment to all defendants on the claim of malicious prosecution. We affirm the grant of summary judgment in favor of Deputy Greene on the claim of excessive force. We reverse the grant of summary judgment in favor of Deputy Magana on the claim of excessive force involving the alleged kicking of Ponce.
 
 
 44
 We affirm the district court's evidentiary rulings in the trial against Deputy Lloyd. However, because the verdict in Lloyd's favor was based on erroneous jury instructions that were prejudicial to Ponce's case, we reverse the judgment and remand for a retrial.
 
 
 45
 Ponce's request for attorney fees pursuant to 42 U.S.C. Sec. 1988 is denied. Ponce has not prevailed on the merits of his claim and he is therefore not entitled to an award of attorney fees under section 1988. Farrar v. Hobby, 113 S. Ct. 566, 571-73 (1992); Hanrahan v. Hampton, 446 U.S. 754, 758 (1980) (per curiam); Proctor v. Consolidated Freightways Corp. of Del., 795 F.2d 1472, 1478-79 (9th Cir. 1986); see also Corder v. Brown, 25 F.3d 833, 840-41 (9th Cir. 1994). Each party shall bear its own costs and attorney fees on appeal. We have considered all of the contentions raised by the parties and conclude that no additional discussion is necessary.
 
 
 46
 AFFIRMED IN PART, VACATED AND REMANDED IN PART, AND REVERSED AND REMANDED IN PART. NO COSTS ALLOWED.
 
 
 
 *
 Honorable Robert R. Merhige, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 At the trial against Deputy Lloyd, Ponce testified that he was face down on the ground as he was being arrested and after he was handcuffed and that before or as the dog was being released from him, "[s]omething distracted me like somebody kicked me or something behind the neck ...."
 
 
 [2]
 Ponce testified at the trial against Deputy Lloyd that at the time of his arrest all he could see "was a lot of legs around me," and that he was told not to turn back or look back
 
 
 [3]
 Ponce's initial notice of appeal stated he was appealing from "the final judgment entered in this action on January 14, 1993, and ... will specifically include appeals from the orders of dismissal and summary adjudication entered on October 24, 1991, July 27, 1992 and January 25, 1993 and generally from the orders entered herein." The next day, he filed an Amended Notice of Appeal, appealing from the "final judgment in this action on January 14, 1993."
 
 
 [4]
 The state law claims included battery, false arrest, false imprisonment, negligence, negligent employment and violation of the Unruh Act, Cal. Civil Code Sec. 51.7, et. seq