**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

A. D., a Minor; J. E., a Minor;
SUE CASEY,
             *Plaintiffs-Appellees,*

               v.

STEPHEN MARKGRAF,
             *Defendant-Appellant,*

             and

STATE OF CALIFORNIA HIGHWAY
PATROL.

             *Defendant,*

No. 09-16460

D.C. No.
3:07-cv-05483-SI

A. D., a Minor; J. E., a Minor;
SUE CASEY,
             *Plaintiffs-Appellees,*

               v.

STATE OF CALIFORNIA HIGHWAY
PATROL,

             *Defendant,*

             and

STEPHEN MARKGRAF,
             *Defendant-Appellant.*

No. 09-17635

D.C. No.
3:07-cv-05483-SI

OPINION

Appeal from the United States District Court
for the Northern District of California
Susan Illston, District Judge, Presiding

Argued and Submitted
November 3, 2010—San Francisco, California

4579

Filed April 6, 2011

Before: Arthur L. Alarcón, Pamela Ann Rymer, and
N. Randy Smith, Circuit Judges.*

Opinion by Judge Rymer

---

*Due to the death of the Honorable David G. Trager, the Honorable N. Randy Smith, United States Circuit Judge for the Ninth Circuit, was drawn to replace him. Judge Smith has read the briefs, reviewed the record, and listened to the audio recording of oral argument held on November 3, 2010.

---

**COUNSEL**

John P. Devine, Deputy Attorney General, San Francisco, California; Thomas A. Blake, Deputy Attorney General, San Francisco, California, for the defendant-appellant.

John H. Scott, Scott Law Firm, San Francisco, California; Amitai Schwartz, Law Offices of Amitai Schwartz, Emery-ville, California, for the plaintiffs-appellees.

---

**OPINION**

RYMER, Circuit Judge:

California Highway Patrol Officer Stephen Markgraf appeals the judgment following a jury trial in favor of A.D. and J.E. on their claim under 42 U.S.C. § 1983 that Markgraf violated their Fourteenth Amendment right to a familial relationship when he shot and killed their mother, Susan Eklund, at the end of a high-speed chase. The district court denied Markgraf's motions for summary judgment and judgment as a matter of law on the ground of qualified immunity. While we decline to review the ruling on summary judgment, we believe Markgraf is entitled to qualified immunity. Accordingly, we reverse on this issue. Markgraf separately appeals

the award of attorneys' fees, which we vacate in light of our disposition on the merits.

I

Around 2:00 a.m. on March 23, 2006, California Highway Patrol (CHP) officers Markgraf and Johnson, stationed in the Oakland division, were notified by dispatch that a stolen vehicle was being pursued into their area. The vehicle, a white Ford, was being driven at high speeds using all lanes of the freeway and without its headlights on. The driver, later identified as Karen Eklund, was the only occupant.

Markgraf and Johnson intercepted the Ford as it came into Oakland. Another CHP car with two officers joined the pursuit, and once the stolen vehicle began to cross the Bay Bridge, Officer Wrathall and Sergeant Clare of the Golden Gate Division in San Francisco also became involved. Clare was in charge of the San Francisco area that night. The Ford was traveling across the bridge at over one hundred miles per hour, and continued on city streets in San Francisco at speeds up to fifty miles per hour.

Eventually the Ford turned onto a street that curves right at the end into a cul-de-sac and hit a chain link fence. Markgraf's vehicle stopped broadside of the Ford and some thirty feet behind it, followed by the other patrol cars. Markgraf got out of his vehicle and ran to the right of the Ford to take cover by a parked car; Johnson was still in the police unit, trying to remove his seatbelt.

Eklund then backed into the police car. When she drove forward and stopped, Markgraf looked inside the Ford, did not see any weapons, and tried unsuccessfully to open the door and window while yelling at the driver that the chase was over and to turn off the car. The driver yelled "F —- you" at Markgraf. Eklund reversed again and rammed the police car two more times. Markgraf then opened fire. He fired

twelve shots at the driver through the passenger-side window. Clare told him to stop. Although other officers had their guns drawn, no one else fired a shot. Twenty-five seconds elapsed from the first ramming to firing.

Before the shooting Clare yelled "cross-fire" and "get on the sidewalk guys" to get all the officers on the same side of the street. Markgraf testified that he shot Eklund because he was afraid she would succeed in getting past the parked vehicles and run over the other officers at the scene. He thought he caught two tan uniforms behind the white Ford. Other officers testified they were all on the sidewalk, though Wrathall said she was standing behind the Ford. Some testified that the Ford was stopped or moving forward at the time of the shooting; others testified they couldn't recall. None of the officers believed the Ford posed an immediate threat to their lives.

A.D. and J.E. (collectively, "A.D."), who were twelve and ten years old, respectively, at the time of their mother's death brought suit in state court alleging violations of their Fourth and Fourteenth Amendment rights under § 1983 and the state wrongful death law. The action was removed, and all claims but the Fourteenth Amendment were abandoned.

Markgraf moved for summary judgment on qualified immunity. The district court noted that for purposes of a substantive due process claim under the Fourteenth Amendment, when government actors must act quickly without the benefit of reflection, as here, plaintiffs must show that they acted with "purpose to cause harm unrelated to the legitimate object of arrest" in order to establish behavior that shocks the conscience. *County of Sacramento v. Lewis*, 523 U.S. 833, 836 (1998). The court decided that A.D. had put forth enough evidence to allow a reasonable jury to find that Markgraf used deadly force with a purpose to harm Eklund unrelated to a legitimate law enforcement objective. It thus followed that the constitutional right was clearly established at the time of the alleged violation because no reasonable officer would believe

it was constitutional to harm without a legitimate law enforcement objective. This case was, the court believed, also analogous to "obvious" cases where there does not need to be a materially similar case for the right to be clearly established. Accordingly, it denied summary judgment and the matter went to trial.

The jury returned a verdict in favor of A.D. and J.E., and in a bifurcated damages phase awarded $30,000 to each. In the meantime, Markgraf moved for judgment as a matter of law at the close of A.D.'s case, and renewed it after his case and after trial. Drawing inferences in favor of the verdict, the court found that the jury could reasonably conclude that Markgraf acted with a purpose to harm unrelated to a legitimate law enforcement objective based on evidence that Eklund's car was contained in a dead-end street; Eklund refused to get out of her car and repeatedly said "F — you" to Markgraf; the officers were positioned such that they were not in the path of the Ford; other officers testified they did not feel threatened nor did they perceive an immediate threat at the time of the shooting; five other officers had their guns drawn but none fired other than Markgraf; Eklund's car was either stopped or going forward at the time of the shooting; the location of the Ford was not consistent with Markgraf's testimony; and Markgraf shot Eklund twelve times and emptied his gun. The court denied the JMOL for the same reasons it denied his motion for summary judgment.

The district court granted A.D.'s motion for attorneys' fees, awarding $489,631 in fees for work on the merits; $6,402.59 in costs on the merits; and $63,490 in fees together with $337.86 in costs for the fee petition. The court also granted post-judgment interest.

Markgraf timely appealed the denial of qualified immunity; the verdict, based on exclusion of evidence of Eklund's amphetamine intoxication and criminal record, and failure to

give his proposed instructions; and the award of attorneys' fees.

## II

To the extent Markgraf appeals the denial of his motion for summary judgment, we shall not review it because meanwhile, there has been an adverse jury verdict. *See Ortiz v. Jordan*, 131 S. Ct. 884, 888-89 (2011); *Dixon v. Wallowa County*, 336 F.3d 1013, 1017 (9th Cir. 2003); *see also Price v. Kramer*, 200 F.3d 1237, 1243-44 (9th Cir. 2000) (refusing to review denial of motion for summary judgment on qualified immunity after adverse jury verdict). However, Markgraf preserved his position on qualified immunity — renewed in a Fed. R. Civ. P. 50(b) motion after trial — by bringing a Rule 50(a) motion for judgment as a matter of law before the case was submitted to the jury. *See Ortiz*, 131 S. Ct. at 893. *Cf. Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1083 (9th Cir. 2009) (noting that when a qualified immunity claim cannot be resolved before trial due to a factual conflict, a litigant must make a Rule 50(a) motion to preserve the issue for review on a Rule 50(b) motion).

**[1]** To determine whether an officer such as Markgraf is entitled to qualified immunity, we inquire whether a constitutional right would have been violated on the facts alleged and whether the right was clearly established. *See Pearson v. Callahan*, 129 S. Ct. 808, 815-16 (2009). We need not proceed through the two-step inquiry sequentially. *See id.* at 818. In deciding whether the law governing the officer's conduct was clearly established, we consider whether under that law a reasonable officer could believe the conduct was lawful. *Ortega v. O'Connor*, 146 F.3d 1149, 1154 (9th Cir. 1998).

**[2]** The Fourteenth Amendment violation at issue in this case was the right of Eklund's children to familial association with their mother. As the Supreme Court in *Lewis* and we in *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008), made

clear, only official conduct that "shocks the conscience" is a cognizable due process violation. Whether this is shown, in turn, depends upon which test applies: deliberate indifference, or the more demanding showing that the officer acted with a purpose to harm that is unrelated to legitimate law enforcement objectives. The more demanding standard governs when actual deliberation is impractical. *Id.* As the district court concluded, the purpose to harm standard controls given how quickly events occurred after Eklund's vehicle came to a stop at the chain link fence and she started to ram Markgraf's vehicle. In these circumstances, he lacked "the opportunity for actual deliberation." *Id.* at 1138; *see Bingue v. Prunchak*, 512 F.3d 1169, 1170-71 (9th Cir. 2008) (holding that the *Lewis* intent to harm standard applies to all police officers involved in high-speed chases).

[3] The jury was properly instructed on this standard from *Lewis*.[1] As the jury resolved the facts against Markgraf, we take it as true that he acted with a purpose to cause harm unrelated to a legitimate law enforcement objective.[2] *See Harper v. City of Los Angeles*, 533 F.3d 1010, 1021 (9th Cir. 2008) (in reviewing a JMOL the court must view all evidence in the light most favorable to the nonmoving party); *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002) (same standards govern a renewed motion for JMOL). Regardless, under *Pearson*, we need not focus on whether there was a constitutional

---

[1]Markgraf argues that the court should have contrasted the *Lewis* standard with "deliberate indifference," but having correctly stated what the law *was*, the court was not obliged to state what the law *was not*. Nor did the court abuse its discretion in failing to instruct on the "contours" of the standard as Markgraf proposed, because his instructions covered points that were not in issue.

[2]Markgraf's challenge to the court's refusal to admit testimony about Eklund's criminal background and substance abuse also fails, as the nature of her conduct was never in dispute. *Cf. Boyd v. City and County of San Francisco*, 576 F.3d 938, 943-44 (9th Cir. 2009) (admission of evidence not known to the officer at the time he shot and killed a suspect upheld when the decedent's actions and motives were at issue).

violation because the case can be resolved under the second prong. Markgraf argues that on the second prong of the qualified immunity analysis, the district court should have considered the totality of the circumstances, improperly focused on his motives when the test is objective, and collapsed the inquiry between the first and second prongs into a single prong focused on the purpose to harm.

**[4]** The district court assumed under the clearly-established prong that it would always be objectively unreasonable for an officer to violate this particular constitutional right. It held that no reasonable officer would believe it was constitutional to harm without a legitimate law enforcement objective. This seems to us to conflate the general standard — purpose to harm unrelated to a legitimate law enforcement objective — with the objective standard by which the officer's conduct is to be measured. *See Saucier v. Katz*, 533 U.S. 194, 200 (2001) (holding that the questions of whether the right was clearly established and the reasonableness of the force used cannot be fused), *overruled on other grounds by Pearson*, 129 S. Ct. 808. The inquiry about what a reasonable officer would have understood is more discrete, and "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198-99 (2004). Courts are to ask whether at the time of the officer's actions, it was clearly established "in this more particularized sense" that he was violating a constitutional right. *Id.* at 199 (internal quotation marks omitted). Thus, the question is not whether an objectively reasonable officer would believe it was constitutional to harm without a legitimate law enforcement objective, but whether such an officer would believe, in the circumstances with which Markgraf was confronted, a legitimate law enforcement objective existed.

We conclude that Markgraf might have had "a mistaken understanding as to whether a particular amount of force is legal in those circumstances." *Saucier*, 533 U.S. at 205. In determining whether a reasonable officer would have believed

Markgraf's conduct was unlawful, we ignore Markgraf's subjective motives and consider his actions in light of the totality of the circumstances. *See Graham v. Connor*, 490 U.S. 386, 396-97 (1989); *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982). This "reasonableness is judged against the backdrop of the law at the time of the conduct." *Brosseau*, 543 U.S. at 198.

**[5]** We are unaware of case law prior to March 23, 2006 in which an officer was held to have violated the plaintiff's right to substantive due process under similar circumstances involving a high-speed chase. This suggests that Markgraf did not have fair notice about the contours of A.D.'s constitutional rights. That said, it is not necessary for precisely the same action to have been held unlawful. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Fogel v. Collins*, 531 F.3d 824, 833 (9th Cir. 2008). So we must consider whether cases where force was used by an officer involved in a high-speed chase provided sufficient notice.

**[6]** The Fourteenth Amendment cases involving car chases concern an officer or fleeing suspect striking an innocent bystander or driver. *See, e.g., Lewis*, 523 U.S. 833 (motorcyclist killed when hit by police car in pursuit); *Perez v. Unified Gov't of Wyandotte County*, 432 F.3d 1163 (10th Cir. 2005) (motorist struck by fire truck responding to emergency); *Terrell v. Larson*, 396 F.3d 975 (8th Cir. 2005) (en banc) (officer responding to emergency struck motorist); *Helseth v. Burch*, 258 F.3d 867 (8th Cir. 2001) (motorist injured by fleeing suspect); *Trigalet v. City of Tulsa*, 239 F.3d 1150 (10th Cir. 2001) (motorist killed by fleeing suspect); *Davis v. Twp. of Hillside*, 190 F.3d 167 (3d Cir. 1999) (pedestrian struck as a result of high-speed chase); *Evans v. Avery*, 100 F.3d 1033 (1st Cir. 1996) (pedestrian injured by fleeing suspect's vehicle). Nothing in the universe of cases prior to Markgraf's conduct would have alerted him that his split-second decision in dealing with someone who had just led police on a dangerous

high-speed chase and who was using her car as a weapon shocked the conscience.[3]

[7] For these reasons we conclude that Markgraf is entitled to qualified immunity. In light of this disposition, we vacate the award of attorneys' fees. *See Norwood v. Vance*, 591 F.3d 1062, 1070 (9th Cir. 2010) (vacating award of attorneys' fees after holding the district court erred in denying qualified immunity).

REVERSED IN PART; VACATED IN PART.

---

[3]To the extent the parties rely on Fourth Amendment cases such as *Brosseau*, they involve a different standard and, in any case, do not alter the analysis here.