**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| A. D., a Minor; J. E., a Minor; SUE CASEY, | No. 09-16460 |
| *Plaintiffs-Appellees*, | D.C. No. 3:07-cv-05483-SI |
| v. | |
| STATE OF CALIFORNIA HIGHWAY PATROL, | |
| *Defendant*, | |
| and | |
| STEPHEN MARKGRAF, | |
| *Defendant-Appellant*. | |

| | |
|---|---|
| A. D., a Minor; J. E., a Minor; Sue Casey, | No. 09-17635 |
| *Plaintiffs-Appellees,* | D.C. No. 3:07-cv-05483-SI |
| v. | |
| State of California Highway Patrol, | OPINION |
| *Defendant,* | |
| and | |
| Stephen Markgraf, | |
| *Defendant-Appellant.* | |

Appeal from the United States District Court
for the Northern District of California
Susan Illston, District Judge, Presiding

Argued and Submitted
September 18, 2012—San Francisco, California

Filed April 3, 2013

Before: Arthur L. Alarcón, Diarmuid F. O'Scannlain,
and N. Randy Smith, Circuit Judges.

Opinion by Judge N.R. Smith

# SUMMARY*

## Civil Rights

The panel affirmed the district court's denial of plaintiff's motion for judgment as a matter of law in a 42 U.S.C. § 1983 action and reversed the district court's award of attorneys' fees and remanded.

Plaintiffs alleged that police officer Stephen Markgraf violated federal and state law when he shot and killed their mother Karen Eklund at the end of a high-speed chase. The panel held that it was clearly established that a police officer violates the Fourteenth Amendment due process clause if he kills a suspect when acting with the purpose to harm, unrelated to a legitimate law enforcement objective. Determining that the jury reasonably found that Markgraf shot Eklund with a purpose to harm unrelated to a legitimate law enforcement objective, the panel held that Markgraf could not assert qualified immunity in a post-verdict motion for judgment as a matter of law.

The panel also held that due to an intervening change in the law, the district court's conclusion that it could not consider amounts discussed in settlement negotiations in determining the amount of a reasonable attorneys' fee award was no longer in line with Ninth Circuit cases. The panel reversed the fee award and remanded for a determination of a reasonable fee in light of *In re Kekauoha-Alisa*, 674 F.3d

---

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

1083, 1093-94 (9th Cir. 2012), and *Ingram v. Oroudjian*, 647 F.3d 925, 927 (9th Cir. 2011).

## COUNSEL

Edmund G. Brown, Jr., James M. Schiavenza, Paul T. Hammerness, Tom Blake (briefed), and John P. Devine (briefed and argued), Office of the Attorney General of California, San Francisco, California, for Defendant-Appellant.

Amitai Schwartz (briefed and argued), Moira Duvernay, Law Offices of Amitai Schwartz, Emeryville, California; John H. Scott (briefed), Lizabeth N. de Vries, Scott Law Firm, San Francisco, California; Thomas P. Greerty, Martinez, California, for Plaintiffs-Appellees.

## OPINION

N.R. SMITH, Circuit Judge:

A police officer, who violates another's constitutional right, will receive qualified immunity from suit under 42 U.S.C. § 1983 if the right the officer violated was not protected by clearly established law at the time he acted. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Since 1998, clear precedent has established that a police officer violates the Fourteenth Amendment due process clause if he kills a suspect when acting with the purpose to harm, unrelated to a legitimate law enforcement objective. Therefore, once a jury has found (with reasonable support in the evidence) such a due process violation on the part of the officer, he may not

successfully assert qualified immunity in a post-verdict motion for judgment as a matter of law.

District courts have broad discretion when awarding attorneys' fees. However, due to an intervening change in our case law, the district court's conclusion that it could not consider amounts discussed in settlement negotiations in determining the amount of a reasonable fee award is no longer in line with Ninth Circuit cases.

We therefore affirm the district court in part, and we must reverse and remand in part.

## I.   Facts

Around 2:00 a.m. on March 23, 2006, dispatch notified California Highway Patrol (CHP) officers Stephen Markgraf and Nathan Johnson that police were pursuing a stolen vehicle into their Oakland division area. The driver of the stolen vehicle was traveling without headlights at high speeds, using all lanes of the freeway. The driver, later identified as Karen Eklund, was the vehicle's only occupant. Markgraf and Johnson intercepted and began following Eklund. When Eklund began to cross the Bay Bridge, Officer Sarah Wrathall and Sergeant Laura Clare of the CHP's Golden Gate Division in San Francisco also joined the pursuit. Eklund crossed the bridge at over one hundred miles per hour and continued on city streets in San Francisco at speeds up to fifty miles per hour. Eventually, Eklund turned onto a street that dead ended into a cul-de-sac and hit a chain link fence. Markgraf stopped his vehicle broadside of Eklund's and some thirty feet behind it, followed by Wrathall, Clare, and other patrol cars. Markgraf got out of his vehicle and drew his weapon, leaving Johnson (who was

trying to remove his seatbelt) still in the police unit. Markgraf then ran to the right of Eklund's vehicle to take cover by a parked car.

At that point, Eklund backed into Markgraf and Johnson's police car. She then drove forward and stopped. While Eklund's car was stopped, Markgraf looked inside and did not see any weapons. He then tried unsuccessfully to open the door and break a window while yelling at Eklund to turn off the car, because the chase was over. In response, Eklund yelled "Fuck you," reversed again, and rammed the police car two more times. As the confrontation between Eklund and Markgraf escalated, Clare—who was the supervisor in charge of the San Francisco area that night—yelled "cross-fire" and "get on the sidewalk guys" to get all the officers on the same side of the street. Approximately ten seconds later, Markgraf opened fire on Eklund. After the shooting started, Clare told Markgraf to "stop." Nevertheless, Markgraf continued, firing twelve rounds at Eklund through the passenger-side window and emptying the magazine of his gun. When he stopped to reload, Clare told Markgraf, "Enough." Although other officers had their guns drawn, no one else fired a shot. Twenty-five seconds elapsed from the first ramming to any firing.

A.D. and J.E. (collectively, "Plaintiffs") are Eklund's children; they were twelve and ten years old, respectively, at the time of their mother's death. They brought suit in state court alleging violations of their Fourth and Fourteenth Amendment rights under 42 U.S.C. § 1983 and raising one state law cause of action for wrongful death. The action was removed to federal court. Plaintiffs then abandoned all claims except their Fourteenth Amendment due process claim.

Markgraf moved for summary judgment, asserting that he was entitled to qualified immunity.  The district court denied the motion.  The court reasoned that, based on the Plaintiffs' showing, a reasonable jury could find that Markgraf used deadly force with a purpose to harm Eklund unrelated to a legitimate law enforcement objective.  Such conduct violated the clearly established law set out in *County of Sacramento v. Lewis*, 523 U.S. 833 (1998).    Additionally, the court concluded that Plaintiffs' case was analogous to "obvious" cases, where there does not need to be a materially similar case for the right to be clearly established.

Just before trial, the court granted Plaintiffs' motions to exclude certain evidence during the liability phase of the trial.  First, the court agreed to exclude the expert testimony of a medical doctor who would have testified as to her opinion that Eklund was intoxicated with amphetamines during the incident.  Second, the court granted Plaintiffs' motion in limine to exclude evidence of Eklund's arrest record and criminal history.

At trial, Markgraf's intent in shooting Eklund was at issue.  Markgraf testified that he shot Eklund, because he was afraid she would succeed in getting past the parked vehicles and thereafter run over the other officers at the scene.  He also thought he saw two officers behind Eklund's vehicle. Other officers testified they were all on the sidewalk, though Wrathall said she was standing behind the vehicle.  Some testified that the vehicle was stopped or moving forward at the time of the shooting; others testified they couldn't recall. None of the officers believed Eklund's vehicle posed an immediate threat to their lives.

At the close of Plaintiffs' case-in-chief, Markgraf moved for judgment as a matter of law (JMOL), but the district court denied the motion. After eleven days of trial, the jury returned a verdict in favor of Plaintiffs, and awarded $30,000 to each of them in a bifurcated damages phase. Markgraf then renewed his JMOL motion. The district court also denied that motion.

Drawing all inferences in favor of the verdict, the district court found that the jury could have reasonably concluded that Markgraf acted with a purpose to harm unrelated to a legitimate law enforcement objective based on evidence that (1) Eklund's car was contained in a dead-end street; (2) Eklund refused to get out of her car and repeatedly said, "Fuck you" to Markgraf; (3) the officers were positioned such that they were not in the path of Eklund's car; (4) other officers testified they did not feel threatened nor did they perceive an immediate threat at the time of the shooting; (5) five other officers had their guns drawn but none fired other than Markgraf; (6) Eklund's car was either stopped or going forward at the time of the shooting; (7) the location of Eklund's car was not consistent with Markgraf's testimony; and (8) Markgraf shot Eklund twelve times, emptying his gun.

The district court also granted Plaintiffs' motion for attorneys' fees, awarding $489,631 in fees and $6,402.59 in costs for work on the merits; and $63,490 in fees and $337.86 in costs for work done on the fee petition. The court also granted post-judgment interest.

Markgraf timely appealed (1) the denial of qualified immunity; (2) the verdict, based on the exclusion of evidence of Eklund's amphetamine intoxication and criminal history,

and failure to give his proposed instructions; (3) the denial of his motion for summary judgment;[1] and (4) the award of attorneys' fees.

When we first heard Markgraf's appeal, we reversed the denial of qualified immunity in his renewed motion for JMOL. *A.D. v. Markgraf*, 636 F.3d 555, 562 (9th Cir. 2011), *withdrawn by* 676 F.3d 868 (9th Cir. 2012). Consistent with our decision in favor of Markgraf, we vacated the district court's award of attorneys' fees. *Id.* Plaintiffs filed a petition for rehearing. After consideration of the petition, we withdrew our original opinion and ordered the parties to submit supplemental briefs addressing two issues. *A.D.*, 676 F.3d 868. First, we asked "what degree of deference, if any, should th[e] court give the jury's implicit finding that [Markgraf] used deadly force with the purpose to cause harm unrelated to a legitimate law enforcement objective, and if deference is due, how does this affect the availability of qualified immunity in this case?" *Id.* Second, we asked "[d]oes the subjective requirement in this case that [Markgraf] act with a purpose to harm unrelated to a legitimate law enforcement objective in order to violate [Plaintiffs'] Fourteenth Amendment right to familial association affect the qualified immunity inquiry?" *Id.* We held oral argument addressing these issues on September 18, 2012.

---

[1] We do not need to address Markgraf's appeal of the district court's denial of his summary judgment motion, because a jury has rendered a verdict since Markgraf made the motion. *See Ortiz v. Jordan*, 131 S. Ct. 884, 888–89 (2011).

## II. Analysis

### A. The district court properly denied Markgraf's renewed motion for JMOL.[2]

We review the district court's denial of Markgraf's assertion of qualified immunity as raised in a renewed motion for JMOL de novo. *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002). "Such a judgment is proper if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Id.* Thus, although under de novo review we do not defer to the district court's decision to deny Markgraf's motion, we give significant deference to the jury's verdict and to the nonmoving parties (here, Plaintiffs) when deciding whether that decision was correct. Under this framework, we affirm the district court, because it properly followed that standard of review when it denied Markgraf's renewed motion for JMOL.

Before discussing the qualified immunity defense, we must review the nature of Plaintiffs' claim against Markgraf. Plaintiffs argue that, when Markgraf shot and killed Eklund, he violated their Fourteenth Amendment due process rights by interfering with the liberty interest they (like all children) have in the "companionship and society" of their mother. *Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir.

---

[2] Markgraf preserved his position on qualified immunity—renewed in a Rule 50(b) motion after trial—by bringing a Rule 50(a) motion for JMOL before the case was submitted to the jury. *See Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1083 (9th Cir. 2009) (noting that when a qualified immunity claim cannot be resolved before trial due to a factual conflict, a litigant must make a Rule 50(a) motion to preserve the issue for review on a Rule 50(b) motion).

1991); *see also Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 371 (9th Cir. 1998). Police conduct violates due process if it "shocks the conscience." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008). Conscience-shocking actions are those taken with (1) "deliberate indifference" or (2) a "purpose to harm . . . unrelated to legitimate law enforcement objectives." *Id.* The lower "deliberate indifference" standard applies to circumstances where "actual deliberation is practical." *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010). However, in circumstances where an officer cannot practically deliberate, such as where "a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may only be found to shock the conscience if he acts with a purpose to harm unrelated to legitimate law enforcement objectives." *Id.* The parties do not dispute that the heightened "purpose to harm" standard applies to this case.

Illegitimate law enforcement objectives include "bully[ing] a suspect or get[ting] even." *Id.* (internal quotation marks omitted). Moreover, even if the officer "ultimately effectuat[es] an arrest," he still violates the due process clause if he used force with only an illegitimate purpose in mind. *See Porter*, 546 F.3d at 1140. The purpose to harm standard is a subjective standard of culpability.

Consistent with this law, the district court instructed the jury that the "purpose to harm" standard governed Markgraf's conduct. After being given that instruction, the jury found that Markgraf had acted with a purpose to harm unrelated to a legitimate law enforcement objective when he shot Eklund. The jury thus rendered a verdict for Plaintiffs. In his renewed motion for JMOL, Markgraf then again asserted qualified immunity as a defense.

A defendant will receive qualified immunity if one of two conditions are met.  First, immunity will be applied if the plaintiff has not "alleged" or "shown" facts that would make out a constitutional violation.  *Pearson*, 555 U.S. at 232. Second, even if the Plaintiff has shown such a violation, the defendant is entitled to qualified immunity if the constitutional right allegedly violated was not "'clearly established' at the time of defendant's alleged misconduct." *Id.*  Because we can proceed through these analytical steps in any order, *id.* at 236, we first address whether the constitutional law governing Margkraf's conduct was clearly established when he shot Eklund.

      **1.** **On March 23, 2006, it was clearly established law that a state official, who acts with a purpose to harm unrelated to a legitimate law enforcement objective, violates the Fourteenth Amendment due process clause.**

By March 23, 2006—the day that Markgraf shot Eklund—it was clearly established that a police officer, who acts with the purpose to harm unrelated to a legitimate law enforcement objective, violates the rights protected by the Fourteenth Amendment due process clause.  In 1998, the Supreme Court held that a police officer, who acts under circumstances where "actual deliberation is [not] practical," violates due process if he acts with a "purpose to cause harm unrelated to the legitimate object of arrest."  *Lewis*, 523 U.S. at 836, 851; *see also Moreland*, 159 F.3d at 372; *cf. Porter*, 546 F.3d at 1137 (concluding that deliberation was not practical in a "rapidly escalating . . . confrontation").  Since *Lewis*, we also identified (in addition to arrest) self-protection and the protection of the public as legitimate objectives that could justify a police officer acting with the purpose to harm.

*See Moreland*, 159 F.3d at 373. Taken together, these cases established that a police officer who acted with the purpose to harm a civilian, unrelated to the legitimate law enforcement objectives of arrest, self-defense, or the defense of others, violated the Fourteenth Amendment due process clause.[3]

To be *clearly* established, the foregoing law only must have been "sufficiently clear that a reasonable official would understand that what he [was] doing violate[d] [a constitutional] right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). Reasonableness is not a demanding standard. The "state of the law" was sufficiently clear if it gave "fair warning" to an officer that his conduct was unconstitutional. *Id.* at 741.

After *Lewis* and *Moreland*, no reasonable officer could fairly have believed that it was constitutional to shoot a civilian with the subjective purpose to harm unrelated to a legitimate objective. Even if those cases are factually distinguishable, that is irrelevant in this case, because the constitutional rule they established "appl[ies] with obvious clarity to [Markgraf's conduct]." *Id.* (quoting *United States v. Lanier*, 520 U.S. 259, 271 (1997)). Further, because we are confined to the jury's factual finding that Markgraf acted with a purpose to cause Eklund's death unrelated to any legitimate law enforcement objective, we are essentially compelled to

---

[3] Notably, in *Porter*, the parties agreed that this law was clearly established by 2003—nearly three years before Markgraf shot Eklund. *See Porter*, 546 F.3d at 1140. Additionally, we acknowledge that there may be other "legitimate law enforcement objectives" in addition to those listed. However, neither Markgraf nor the Plaintiffs has suggested any. Markgraf only identifies one "legitimate purpose" on appeal: protecting the safety of other officers.

deny Markgraf qualified immunity—it would be "clear to a reasonable officer" that killing a person with no legitimate law enforcement purpose violates the Constitution. *See Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam). This is one of those rare cases in which the constitutional right at issue is defined by a standard that is so "obvious" that we must conclude—based on the jury's finding—that qualified immunity is inapplicable, even without a case directly on point. *See Hope*, 536 U.S. at 740–41 (recognizing that "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question"). Accordingly, we conclude that it was clearly established law when Markgraf shot Eklund that acting with the purpose to harm unrelated to a legitimate law enforcement objective violated due process.

Markgraf argues that the "purpose to harm" standard outlined in *Lewis* and *Moreland* cannot be "clearly established," because the standard is too general. He cautions that the Supreme Court has "repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2084 (2011) (internal citation omitted). However, we do not anticipate that our analysis will add to the Supreme Court's tally of such cases.

The Supreme Court has rejected proposed definitions of clearly established law as "too general" when they merely restate the applicable constitutional standard. For example, in *al-Kidd* the Supreme Court indicated that "[t]he general proposition . . . that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." *al-Kidd*, 131 S. Ct. at 2084. Similarly, in

*Anderson v. Creighton*, 483 U.S. 635, 639 (1987), the Court acknowledged that "the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause . . . violates a clearly established right." The Court then rejected the notion that the law, defined at such a level of generality, was "clearly established" for qualified immunity purposes. Rather, to be clearly established, "in the light of pre-existing law the unlawfulness must be apparent." *Id.* at 640.

Applying the principles of *al-Kidd* and *Anderson* to this case, we could not say that it is clearly established law (for purposes of qualified immunity) that whatever "shocks the conscience" violates due process. However, the Supreme Court has defined the law of due process that governed Markgraf's conduct with more particularity. A reasonable police officer in Markgraf's position would have known that acting with a purpose to harm unrelated to a legitimate law enforcement objective (such as arrest, self-defense, or the defense of others) violates due process. Where, as here, a jury has determined that the officer acted with such a purpose, we must conclude that he violated clearly

established law and deny him qualified immunity.[4]   *See Anderson*, 483 U.S. at 639–40.

## 2. The jury found that Markgraf violated Plaintiffs' constitutional rights.

Markgraf is not entitled to qualified immunity, because Plaintiffs have shown that he violated the foregoing clearly established law.   The Supreme Court has formulated the doctrine of qualified immunity to dispose of "insubstantial claims" at the earliest stage of litigation possible.   *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) ("[W]e repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.").   Thus, defendants typically assert qualified immunity in a motion to dismiss or motion for summary judgment.   At those stages, a court may grant

---

[4] In an Eighth Amendment case, the Ninth Circuit held that "the general rule that prison officials cannot deliberately disregard a substantial risk of serious harm to an inmate" was not sufficiently defined to be "clearly established law."   *Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1050–51 (9th Cir. 2002).   This was because, under the Eighth Amendment standard, "it would not be clear to a reasonable prison official when the risk of harm [from a decision] changes from being *a* risk of *some* harm to a *substantial* risk of *serious* harm."   *Id.*   Indeed the qualitative difference between the degree of risk that will result in liability under the Eighth Amendment's standard, and that which will not, is a fact-bound inquiry. However, we do not need to engage in the same sort of fact-bound inquiry to analyze the Fourteenth Amendment due process clause violation in this case.   The standard for a due process violation—purpose to harm unrelated to a legitimate law enforcement objective—does not contain undefined qualitative elements ("substantial risk" and "serious harm") like the Eighth Amendment standard does.   Although "legitimate" is such a qualifier, we (and the district court) have adequately defined it for the purposes of this case by naming specific "legitimate" objectives.   *See also supra* note 3.

qualified immunity if the plaintiffs have not made out a constitutional violation, based on the facts alleged or "shown." *See Pearson*, 555 U.S. at 232. Here, Plaintiffs have done more than "show" that Markgraf violated their due process rights—they proved it to a jury. Therefore, the jury's verdict against Markgraf is sufficient to deny him qualified immunity on this prong of the analysis.

Markgraf argues that we should disregard the jury's finding and analyze, objectively, whether he *could have* acted with a legitimate objective. However, the verdict precludes us from hypothesizing about whether Markgraf could have believed that a legitimate law enforcement objective existed. "[D]eference to the jury's view of the facts persists throughout each prong of the qualified immunity inquiry." *Guillemard-Ginorio v. Contreras-Gomez*, 585 F.3d 508, 528 (1st Cir. 2009). According to the jury's view of the facts, Markgraf shot Eklund without a legitimate law enforcement objective.[5] We would not be deferring to that view if we now

---

[5] Markgraf argues that we cannot determine, based on the jury's verdict, that he shot Eklund with the purpose to harm her unrelated to a legitimate law enforcement objective. However, we can infer that the jury made this finding by viewing the jury's verdict in light of the jury instructions. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions."). The jury instructions specified that the jury should find that Markgraf violated Plaintiffs' due process rights if he "acted in a manner which shocks the conscience." Consistent with the clearly established law outlined above, *supra* Part II.A.1, the instructions defined "shocks the conscience" as "act[ing] with a purpose to cause [Eklund's] death unrelated to the legitimate law enforcement purposes of taking her into custody, self-defense, or the defense of others." Having received these instructions, the jury unanimously concluded that Markgraf had violated Plaintiffs' due process rights. Presuming that the jury followed these instructions (Markgraf does not argue otherwise), we can conclude that the jury found Markgraf shot Eklund for an illegitimate

held that Markgraf was entitled to qualified immunity, because he *could have* believed a legitimate law enforcement objective existed under the circumstances.[6] Although such an inquiry might be appropriate when a defendant asserts qualified immunity in a motion for summary judgment or a pre-verdict JMOL motion, the jury's view of the facts must govern our analysis once litigation has ended with a jury's verdict.[7]

---

purpose—a purpose other than taking her into custody, defending himself, or defending other officers. Logically, the jury would have had to make this finding in order to enter a verdict against Markgraf on Plaintiffs' due process claim. *See infra* note 6.

[6] Our opinion in *Sloman v. Tadlock* supports this analysis. 21 F.3d 1462, 1465–66 (9th Cir. 1994). There, we discussed the effect a jury verdict against a defendant on a First Amendment claim (which has a subjective culpability standard) would have on the qualified immunity analysis. *Id.* at 1468–69. At trial, the defendant's subjective "motives for the actions he took were at issue." *See id.* at 1468. The jury found that the defendant "intended to interfere with [Plaintiff]'s political activity and that it was a substantial or motivating factor in his conduct." *Id.* We held that, as a result of the jury's finding, "the district court could not have done other than to conclude that a reasonable officer in [the defendant's] place would have known his conduct violated [the plaintiff's] clearly established constitutional rights." *Id.* at 1469. Therefore, the defendant would not have been entitled to qualified immunity, had the court faced this issue. Likewise here, the jury's verdict finding that Markgraf acted with a subjective purpose that is prohibited by clearly established constitutional law prohibits us from granting him qualified immunity. Consistent with *Sloman*, this is so even if a reasonable officer *could have* shot Eklund with the purpose to harm for some legitimate goal based on an objective view of the facts.

[7] In support of our analysis in our previous opinion, we cited *Graham v. Connor*, 490 U.S. 386, 396–97 (1989) for the proposition that "we ignore Markgraf's subjective motives and consider his actions in light of the totality of the circumstances." *A.D.*, 636 F.3d at 561. However, qualified

Markgraf also worries that "if the [court] looks to any alleged [improper] motives [under the 'purpose to harm' prong]," as the jury's verdict compels us to do here, "those motives will necessarily preclude a subsequent determination that anything could have been done with a legitimate law enforcement objective." To us, this is not a problem. In fact, we approved of just such a result in *Porter*. There, we acknowledged that an officer who used force against a suspect to "teach him a lesson" or "get even" would violate the Fourteenth Amendment due process clause under *Lewis*, "even though [the officer was] ultimately effectuating an arrest." *Porter*, 546 F.3d at 1140–41 (quoting *Davis v. Twp. of Hillside*, 190 F.3d 167, 172–73 (3d Cir. 1999) (McKee, J., concurring)). Thus, even if an officer's use of force could be justified after the fact by a legitimate objective (such as effectuating arrest) he can still be held liable for a constitutional violation if he used force for an illegitimate purpose.[8]

---

immunity was not at issue in *Graham*. Rather, the Court was explaining that, when determining whether a police officer used excessive force in violation of the Fourth Amendment, the proper analysis of the constitutional claim—not of qualified immunity—was objective. *Graham*, 490 U.S. at 397. The passage we cited reads: "As in other Fourth Amendment contexts, . . . the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* Plainly, that statement only governs the analysis of whether, in a Fourth Amendment excessive force case, the defendant used a reasonable amount of force. Accordingly, this statement in *Graham* does not affect our analysis of Markgraf's qualified immunity defense.

[8] In support of his argument, Markgraf cites two cases from other circuits that do not apply to the issues raised in this appeal. In *Steen v. Myers*, 486 F.3d 1017, 1023 (7th Cir. 2007), the Seventh Circuit reviewed

Markgraf is not without recourse just because the jury has rendered a verdict against him.  He could have directly attacked the sufficiency of the evidence to support the jury's verdict on appeal, but he did not.  However, even if he had done so here, we agree with the district court that there was sufficient evidence to support the jury's verdict at trial.  In denying Markgraf's renewed motion for JMOL, the district court cited the following facts as supporting the verdict:

> (1) Ms. Eklund's car was contained in a dead-end street; (2) Ms. Eklund refused to get out of her car and repeatedly said "fuck you" to Markgraf; (3) the officers were positioned such that they were not in the path of Ms. Eklund's vehicle; (4) other officers at the scene testified that they did not feel threatened nor did they perceive an immediate threat at

---

the entry of summary judgment on a due process claim in favor of defendants.  After reviewing conflicting evidence about the defendant officer's alleged motive to harm the suspect against evidence of a legitimate objective (pursuit after fleeing from a traffic stop), the court concluded that there was not "sufficient evidence of some intent to harm that goes beyond" the legitimate objective of pursuing a suspect who is fleeing from a traffic stop.  *Id.* at 1023–24.  Rather than support Markgraf's argument, *Steen* undercuts it, by implying that evidence of an intent to harm could override recognized legitimate law enforcement objectives in establishing a due process violation.  Similarly, *Graves v. Thomas*, 450 F.3d 1215 (10th Cir. 2006) does not support Markgraf's argument.  In *Graves*, the Tenth Circuit reviewed the district court's grant of summary judgment to the defendant police officer.  *Id.* at 1220.  The panel affirmed, because the record supported, "in spades," a "legitimate object of arrest," without "legitimately suggest[ing] an intent of [the officer] to cause harm unrelated to the arrest."  *Id.* at 1223.  Thus, *Graves* does not address a case like the instant one where a jury *has* found that the defendant acted with a purpose to harm, unrelated to a legitimate law enforcement objective.

the time of the shooting; (5) five other officers had guns drawn but no one other than Officer Markgraf fired; (6) officers testified that Ms. Eklund's car was either stopped or going forward at the time of the shooting; (7) the location of the Eklund vehicle at the time of the shooting was not consistent with Markgraf's testimony; and (8) Officer Markgraf shot Ms. Eklund 12 times and emptied his gun.

This evidence supports the reasonable inference that Markgraf acted with the purpose to harm unrelated to a legitimate law enforcement objective. That is sufficient to sustain the verdict against Markgraf in the face of an attack on the sufficiency of the evidence.

Therefore, we affirm the district court's denial of Markgraf's renewed motion for JMOL. The jury reasonably found that Markgraf shot Eklund with a purpose to harm unrelated to the legitimate law enforcement objectives of arrest, self-defense, or defense of others. It was clearly established before their encounter that such conduct violated Plaintiffs' substantive due process rights. Therefore, Markgraf is not entitled to qualified immunity.

None of the qualified immunity cases Markgraf cites control our decision, because none address the precise issue in this case. Here, the nature of the constitutional claim (containing a subjective element), and the case's procedural posture (raising qualified immunity in a post-verdict motion for JMOL), requires deference to the jury's findings that is not present in cases with other constitutional liability theories or where qualified immunity is asserted at a different stage of

litigation. *See Branch v. Tunnell*, 937 F.2d 1382, 1385–86 (9th Cir. 1991) (noting the tension that arises when applying the qualified immunity framework to an underlying constitutional violation with a subjective element), *overruled on other grounds by Gailbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002). For instance, unlike in Fourth Amendment cases, Plaintiffs' due process claim is based on a subjective, rather than *objective*, standard of culpability. *Cf. Thompson v. Mahre*, 110 F.3d 716, 721–23 (9th Cir. 1997). While in a Fourth Amendment case we could choose not to accept the jury's conclusion that the officer's conduct was unreasonable, here, we cannot disregard the jury's reasonable finding of fact that Markgraf acted with a subjective bad intent.

Further, unlike a motion to dismiss or motion for summary judgment, we must defer to the facts as they were reasonably found by the jury—we do not draw our own inferences from them. *See Sloman*, 21 F.3d at 1469 (confirming that the district court was correct to defer to the jury's finding that the defendant acted with unconstitutional subjective intent when ruling on his qualified immunity defense after a jury verdict); *cf. Dunn v. Castro*, 621 F.3d 1196, 1198–99 (9th Cir. 2010) (analyzing first prong of qualified immunity analysis in motion to dismiss); *Wilkinson*, 610 F.3d at 554 (analyzing denial of qualified immunity in motion for summary judgment).

Markgraf downplays the significance of the difference between cases in which a jury has rendered a verdict and those that are still at the motion to dismiss or summary judgment stage. He argues that these cases are relevant, because "[q]ualified immunity decisions on motion to dismiss or summary judgment [both require] deference to the

plaintiff's evidence or allegations." These cases, he argues, "demonstrate the proper use of underpinning facts when reaching legal conclusions about the immunity issue." His analysis misses the point that courts must deal with the underpinning facts differently once the jury has rendered a verdict. *See, e.g.*, *Winarto v. Toshiba Am. Elecs. Components*, *Inc.*, 274 F.3d 1276, 1283 (9th Cir. 2001).

In practice, our analysis might have the effect of foreclosing qualified immunity defenses in similar cases where a jury finds that a defendant has violated the constitution by acting with a prohibited intent. However, we do not hold that a court *cannot* conduct an objective qualified immunity analysis after a jury verdict. *McKenna v. Edgell*, 617 F.3d 432, 438–46 (6th Cir. 2010) (reviewing qualified immunity defense after jury verdict). Rather, post-verdict, a court must apply the qualified immunity framework to the facts that the jury found (including the defendant's subjective intent). *McKenna*, 617 F.3d at 437 (quoting *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 900 (6th Cir. 2004)) ("[W]here the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability."). Moreover, a defendant who loses at trial has other options. He could *directly* challenge the jury's findings under the generally applicable JMOL standards. The defendant could also attack the jury instructions as inadequate statements of clearly established law (*e.g.*, the judge failed to identify a clearly established legitimate law enforcement purpose that had some support in the facts). *See Medtronic, Inc. v. White*, 526 F.3d 487, 493 (9th Cir. 2008). Thus, while our holding will narrow the number of cases in which a defendant who loses at trial will

receive qualified immunity, it does not leave such a defendant without recourse.[9]

In sum, we affirm the district court's denial of Markgraf's renewed motion for JMOL. The district court correctly concluded that, on the facts as the jury found them, Markgraf violated clearly established law. Like the district court, we also are bound by the jury's findings.

**B. We reverse and remand the fee award so that the district court may consider the amounts of Markgraf's settlement offers in determining a reasonable fee award.**

The district court awarded Plaintiffs $553,120 in attorneys' fees under 42 U.S.C. § 1988(b) for hours expended both on the merits and on the fee petition. We review that award for abuse of discretion. *McCown v. City of Fontana*, 565 F.3d 1097, 1101 (9th Cir. 2009). "A district court by definition abuses its discretion when it makes an error of law." *Koon v. United States*, 518 U.S. 81, 100 (1996). Due to an intervening change in our case law, the district court committed such an error here. Thus, we must reverse and remand the fee award.

---

[9] We also do not find it a "troubling issue" that, applying our holding, different results might be obtained when qualified immunity is raised as a post-verdict defense to both Fourth and Fourteenth Amendment claims in the same case. This is simply a feature of the differing nature of the constitutional claims—one with a subjective intent element and one without. *Cf. Crawford-El v. Britton*, 523 U.S. 574, 584–94 (1998) (rejecting a heightened pleading standard in cases alleging constitutional violations with a subjective intent element even though this might increase the number of subjective intent constitutional claims that would survive to summary judgment in qualified immunity cases).

42 U.S.C. § 1988(b) authorizes courts to award a reasonable attorneys' fee to the prevailing party in an action to enforce § 1983. We presume the "lodestar" amount (the product of a reasonable number of hours worked multiplied by a reasonable hourly rate) to be a reasonable fee. *City of Riverside v. Rivera*, 477 U.S. 561, 568 (1986). Ultimately, however, "[t]he reasonableness of the fee is determined primarily by reference to the level of success achieved by the plaintiff." *McCown*, 565 F.3d at 1101–02 (9th Cir. 2008) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). In evaluating the Plaintiffs' level of success, district courts should consider two questions: "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *See id.* at 1103 (quoting *Hensley*, 461 U.S. at 434) (internal quotation marks omitted).

Markgraf argued both below and on appeal that Plaintiffs achieved a low level of success by going to trial. He further argues that the district court should have considered amounts discussed in pre-trial settlement negotiations as evidence of Plaintiffs' limited success. The district court did not consider these amounts, because it concluded that then-controlling Ninth Circuit precedent interpreting Federal Rule of Evidence 408 precluded it from considering them.

By refusing to consider the amounts discussed in settlement negotiations, the district court correctly applied then-existing Ninth Circuit case law. *See McCown*, 565 F.3d at 1104 n.4 (noting that courts "generally refrain from referencing proposed settlement agreements in light of Federal Rule of Evidence 408"). However, when reviewing

a district court's decision for legal error, we must "apply the law in effect at the time [we] render[] [our] decision." *Henderson v. United States*, 133 S. Ct. 1121, 1126 (2013). Under the law now in effect, Federal Rule of Evidence 408 does not bar district courts in the Ninth Circuit from considering amounts discussed in settlement negotiations as evidence of the extent of the plaintiff's success.  *See In re Kekauoha-Alisa*, 674 F.3d 1083, 1093–94 (9th Cir. 2012); *Ingram v. Oroudjian*, 647 F.3d 925, 927 (9th Cir. 2011). Thus, the district court's conclusion that it could not consider those amounts, though appropriate at the time, has now changed.  We must then reverse the fee award and remand for a determination of a reasonable fee in light of *In re Kekauoha-Alisa* and *Ingram*.

On remand, the district court has the discretion (1) to consider the amounts discussed in settlement negotiations, or not; and (2) to give those amounts as much or as little weight as it sees fit.  *See Lohman v. Duryea Borough*, 574 F.3d 163, 169 (3d Cir. 2009) (acknowledging that settlement offers are "clearly only one factor to be considered in the award of fees," and that the district court "is also free to reject such evidence as not bearing on success"); *cf. In re Kekauoha-Alisa*, 674 F.3d at 1093–94; *Ingram*, 647 F.3d 925 (adopting *Lohman*'s holding that Federal Rule of Evidence 408 does not bar consideration of settlement offers when making attorneys' fee awards).  It is not our place to opine as to how that discretion should be exercised.

## C. Consistent with our 2011 opinion, we reject Markgraf's other claims.

Previously, Markgraf made two other claims on appeal: First, that the district court erred in excluding evidence of

Eklund's drug usage and criminal history. Second, that the district court erred by failing to include portions of Markgraf's jury instructions. Nothing has changed since we denied both of these claims in our first opinion. *A.D.*, 636 F.3d at 560 nn.1–2. The evidence was properly excluded because Eklund's conduct was not in issue during the liability phase of the trial. Further, the district court did not abuse its discretion in formulating the jury instructions. "Having correctly stated what the law *was* [under *Lewis*], the court was not obliged to state what the law *was not*." *Id.* at 560 n.1 (emphasis in original). Nor did the court abuse its discretion in failing to instruct on the "contours" of the standard as Markgraf proposed, because his instructions covered points that were not in issue.

## III.    Conclusion

The district court correctly denied Markgraf's renewed motion for JMOL, because the jury reasonably found that Markgraf shot Eklund with a purpose to harm unrelated to a legitimate law enforcement objective. However, we reverse and remand the fee award to permit the district court to re-determine the amount of a reasonable fee in light of an intervening change in our case law.

**AFFIRMED in part, REVERSED and REMANDED in part.** The parties shall bear their own costs on appeal. *See* Fed. R. App. P. 39(a)(4).