**NOT FOR PUBLICATION**
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

FILED

DEC 22 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| R. H., a minor, by and through her guardian ad litem, Sheila Brown; ESTATE OF ERIC JAY HAMES, by and through its personal representative, Crystal Dunlap-Bennett, <br><br> Plaintiffs-Appellants, <br><br> v. <br><br> CITY OF REDDING, a public entity; et al., <br><br> Defendants-Appellees. | No. 22-15361 <br><br> D.C. No. 2:20-cv-01435-WBS-DMC <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the Eastern District of California
William B. Shubb, District Judge, Presiding

Argued and Submitted December 7, 2022
San Francisco, California

Before: GRABER, WALLACH,[**] and WATFORD, Circuit Judges.

---

[*]   This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]   The Honorable Evan J. Wallach, United States Circuit Judge for the U.S. Court of Appeals for the Federal Circuit, sitting by designation.

Plaintiffs appeal from an order granting summary judgment in favor of four City of Redding police officers who fatally shot Eric Jay Hames in August 2018. The district court held that the officers are entitled to qualified immunity on Plaintiffs' Fourth and Fourteenth Amendment claims asserted under 42 U.S.C. § 1983. With respect to the Fourth Amendment claim, the district court exercised its discretion to address only the second step of the qualified immunity analysis. *See Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009) (setting forth the two steps of the analysis). The court did not separately analyze the Fourteenth Amendment claim. We reverse and remand as to the Fourth Amendment claim and vacate and remand as to the Fourteenth Amendment claim.

**1.** At the first step of the qualified immunity analysis, we conclude that a reasonable jury could find that the officers violated Hames's Fourth Amendment right to be free from the use of excessive force. The officers were permitted to use deadly force only if Hames posed an immediate threat of serious physical harm to the officers or others. *See Tennessee v. Garner*, 471 U.S. 1, 11–12 (1985). Viewed in the light most favorable to Plaintiffs, the facts support a finding that Hames did not pose a sufficiently immediate threat to justify the use of deadly force.

Our analysis is aided by clear video footage depicting the fatal shooting from two angles. *See Scott v. Harris*, 550 U.S. 372, 378 (2007). The footage

shows Hames standing against several industrial air conditioning units, visibly winded and out of breath, after running from officers who had responded to reports that Hames was acting erratically in the middle of traffic on a busy street. The four officers form a semi-circle around Hames to prevent him from running past them, with each officer pointing his service weapon at Hames. The footage further depicts one officer return to his car to retrieve a shotgun, which he then points at Hames. Hames's arms are crossed, and he is holding a six-inch knife tucked under his armpit. When Hames takes several steps at a walking pace in the direction of one of the officers, all four officers immediately open fire. At that point, Hames was more than 23 feet away from the officer in whose direction he was moving and at least 15–20 feet away from the closest officer.

We agree with Plaintiffs that a reasonable jury viewing this footage could conclude that the officers' use of deadly force was unreasonable. A jury could find that Hames was not running or charging toward any of the officers and that he was not wielding the knife in a threatening manner. A jury also could find that, given the moderate pace at which Hames was advancing, he was too far away from any of the officers to pose an immediate threat, particularly because the officers appear to have had enough space behind them to back up without sacrificing their ability to prevent Hames from escaping.

The officers contend that Hames posed an immediate threat to them because (1) he was brandishing the knife as a weapon, (2) he ignored their commands to drop it, and (3) he advanced toward one of the officers while holding the knife in "an offensive position" with the blade pointed down. As noted above, that is not the only reasonable interpretation of the video footage. Whether Hames posed a sufficiently immediate threat of serious physical harm to the officers is a disputed factual issue that a jury must resolve. *See Glenn v. Washington County*, 673 F.3d 864, 879–80 (9th Cir. 2011) ("[T]he disputed facts and inferences could support a verdict for either party, and the jury must resolve these factual disputes.").

**2.** At the second step of the qualified immunity analysis, we also must construe the facts in the light most favorable to Plaintiffs. *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam). Viewed in that light, our decision in *Glenn*, which predated the officers' actions in this case by several years, clearly established the law with sufficient particularity to place the officers on fair notice that their use of deadly force in these circumstances was unlawful.

In *Glenn*, we reversed a summary judgment in favor of officers who had fatally shot an intoxicated teenager outside his family home because material questions of fact precluded us from holding that the officers' use of force was reasonable as a matter of law. 673 F.3d at 866. In that case, the decedent was holding a three-inch pocketknife and threatening to kill himself. *Id.* at 873. He

ignored officers' commands to drop the weapon. *Id.* at 876. After a short standoff, the officers opened fire because they believed that the decedent was moving toward the front door of the home, thereby posing a threat to the safety of the family members who were inside. *Id.* at 879. But the facts construed in the light most favorable to the plaintiff could have led a jury to find that the decedent "was not running toward the front door to attack his family, but instead took one or two steps seeking cover from the beanbag rounds" that the officers had just fired. *Id.* Under that version of the facts, we held, a reasonable jury could conclude that the officers' use of deadly force was unreasonable. *Id.* at 879–80.

The facts of this case, when construed in the light most favorable to Plaintiffs, are analogous to those in *Glenn*. Like the decedent in *Glenn*, Hames had not committed a serious crime and had ignored commands to drop the knife that he was holding. And like the decedent in *Glenn*, Hames's movements while holding the knife did not suggest that he intended to use the weapon to attack anyone. Under the version of the facts most favorable to Plaintiffs, it cannot be said that Hames posed an immediate threat of serious physical harm to those around him. *Glenn* holds, and clearly establishes, that using deadly force in circumstances similar to those present here is unlawful unless the suspect poses an immediate threat to others.

The district court relied primarily on *Kisela v. Hughes*, 138 S. Ct. 1148 (2018) (per curiam), but that case is distinguishable. In *Kisela*, officers shot the plaintiff because she approached within "striking distance" of another person while holding a large kitchen knife and ignoring officers' commands to drop it. *See id.* at 1151, 1154. Here, by contrast, Hames was not within striking distance of anyone, and a reasonable jury could conclude that he was not wielding the knife in a manner that posed an immediate threat of serious physical harm to any of the officers.

**3.** The district court did not separately analyze the Fourteenth Amendment claim, which is governed by a different legal standard. *See A.D. v. Cal. Highway Patrol*, 712 F.3d 446, 453 (9th Cir. 2013). Accordingly, we vacate the district court's dismissal of the Fourteenth Amendment claim and remand for the court to consider in the first instance whether that claim can properly be resolved at the summary judgment stage.

**REVERSED in part, VACATED in part, and REMANDED.**